```
IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
          EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )   Docket No. 20 CR 734
            Plaintiff,       )
                             )   Chicago, Illinois
   vs.                       )   December 2, 2020
                             )   12:04 p.m.
ANDREW BOLTZ,                )
                             )
            Defendant.       )

TRANSCRIPT OF TELEPHONIC PROCEEDINGS - Detention Hearing
       BEFORE THE HONORABLE THOMAS M. DURKIN

APPEARANCES:

For the Government:   MS. KAVITHA J. BABU
                      U.S. Attorney's Office in the
                      Northern District of Illinois
                      219 South Dearborn Street, 5th Floor
                      Chicago, Illinois  60604

For the Defendant:    MR. THOMAS MORE LEINENWEBER
                      Leinenweber Baroni & Daffada LLC
                      120 North LaSalle Street, Suite 2000
                      Chicago, Illinois  60602




              ELIA E. CARRIÓN
          Official Court Reporter
         United States District Court
    219 South Dearborn Street, Room 1432,
            Chicago, Illinois 60604
                (312) 408-7782
         Elia_Carrion@ilnd.uscourts.gov
```

1  (Proceedings had telephonically:)
2   THE COURT: Emily, please call the case.
3   THE CLERK: All right. This is Case No. 20 CR 734,
4  United States versus Andrew Boltz.
5   Could I please have the attorney speaking on behalf
6  of the government state their name.
7   MS. BABU: This is Kavitha Babu on behalf of the
8  United States.
9   THE CLERK: And on behalf of the defendant.
10   MR. LEINENWEBER: Good morning, Your Honor. This is
11  Tom Leinenweber on behalf of the defendant.
12   THE COURT: And is the defendant, Andrew Boltz, on
13  the line?
14   Is Andrew Boltz on the line?
15   THE CLERK: Judge, I'll check in with the marshals.
16  I did get confirmation that they would be able to change the
17  hearing time to noon, but I will double-check with them.
18   THE COURT: Okay. And do we have someone from
19  pretrial services on?
20   MS. CHAPMAN: Good afternoon. Kathryn Chapman,
21  pretrial services.
22   THE COURT: While we're waiting for Mr. Boltz, I
23  understand the government indicted this case.
24   MS. BABU: That's correct, Your Honor.
25   THE COURT: And when was the indictment returned?

1  MS. BABU: It was returned yesterday, Your Honor. It
2 came across ECF just a few minutes ago, actually.
3  THE COURT: Okay. And who was it assigned to, if you
4 know?
5  MS. BABU: It's assigned to Judge Blakey, and the
6 assigned magistrate judge is Judge Finnegan.
7  THE COURT: Okay. Mr. Leinenweber, we can -- we're
8 not going to do anything substantive until your client comes
9 on, but I wanted you to have those facts to decide whether or
10 not you want to have a detention hearing in front of me or
11 wait and seek one at a -- in front of, presumably, either
12 Judge Finnegan or Judge Blakey. And you don't have to answer
13 that question right now, but it's a fact you can ponder.
14  MR. LEINENWEBER: Okay. Thanks, Judge. I can answer
15 it now. We're willing to proceed today.
16  THE COURT: Okay. Okay. All right. Let's wait for
17 Mr. Boltz to come on, then.
18    (Off the record.)
19  THE COURT: Okay. Elia, we'll go back on the record.
20  Let's start over, and please call the case and have
21 everyone identify themselves.
22  THE CLERK: All right. This is Case No. 20 CR 734,
23 United States versus Andrew Boltz.
24  Could I please have the attorney on behalf of the
25 government state their name.

1  MS. BABU: This is Kavitha Babu for the
2 United States.
3  THE CLERK: And on behalf of the defendant.
4  MR. LEINENWEBER: Good afternoon, Judge.
5 Tom Leinenweber on behalf of Mr. Boltz, who is on the line.
6  THE CLERK: And on behalf of pretrial services.
7  MS. CHAPMAN: Good afternoon. Kathryn Chapman,
8 pretrial services.
9  THE COURT: All right. We're here today for a
10 detention hearing. Is that correct?
11  MS. BABU: That's correct, Your Honor.
12  MR. LEINENWEBER: That's correct, Your Honor.
13  THE COURT: All right. And, Ms. Babu, why don't you
14 put on the record, I believe there's been an indictment
15 returned on this case?
16  MS. BABU: That's correct, Your Honor. An indictment
17 was returned yesterday. It has been docketed this afternoon.
18 The case is assigned to Judge Blakey and Magistrate
19 Judge Finnegan.
20  THE COURT: Okay. Magistrate Judge Finnegan?
21  MS. BABU: Finnegan.
22  THE COURT: Okay. And, Mr. Leinenweber, you
23 certainly have a right, if you wish, to have either -- I'm not
24 sure if Judge Blakey does his own detention hearings or he
25 assigns them to the magistrate judge, but you would have a

1  right to continue this and have it heard by Judge Finnegan or
2  Judge Blakey instead of me.
3      Do you wish to proceed today?
4      MR. LEINENWEBER: We do, Judge. Thank you.
5      THE COURT: Okay. All right. How do you want to
6  proceed? Ms. Babu, do you have any witnesses or do you wish
7  to proceed just based on argument based on the reports from
8  the pretrial services office?
9      MS. BABU: Your Honor, we do not have any witnesses.
10 We would proceed just with argument, if that is sufficient for
11 the Court.
12     THE COURT: Go ahead.
13     MS. BABU: Your Honor, we do seek the detention of
14 the defendant here, both based on the danger to the community
15 and the risk of nonappearance. This case carries the
16 presumption that no set of conditions can guarantee the safety
17 of the community or the appearance of the defendant under
18 Section 3142(e)(3)(E), and I submit that the defendant cannot
19 rebut that presumption here.
20     The defendant is under a detainer in two other
21 jurisdictions stemming from similar alleged crimes, one in
22 Wilmington, Illinois, in Will County, and then the other in
23 Norwalk, Ohio, also a state case.
24     Normally, just the fact that the defendant is being
25 detained in a state case would be sufficient and often for

1  practical purposes because the defendant will be removed back
2  in state custody to detain the defendant in federal custody.
3  However, here we seek to remand the defendant to federal
4  custody and detain him in federal custody because in state
5  custody the defendant has -- while his bond has been revoked,
6  it is our understanding based on our current investigation
7  that the defendant's family has been working to raise the
8  money for his cash bond, and based on the defendant's danger
9  to the community and the risk of nonappearance, we therefore
10 seek to have him detained in federal custody.
11            As to the danger to the community -- and this is the
12 factors showing that the Court should consider -- the
13 defendant does not have any prior criminal history, but here,
14 that is a fact of no matter -- it should be a fact of no
15 matter to the Court.
16            Based on the allegations of the defendant's conduct
17 over the past approximately 18 months, the defendant has -- is
18 alleged to have kidnapped a minor female victim in Will County
19 in July of -- excuse me -- in September of 2019.  The alleged
20 conduct in this case happened in January of 2020.  Therefore,
21 he was under the supervision of the Will County Court while he
22 engaged in the conduct charged in Federal Court.
23            Following the -- following the conduct in this case
24 in January of 2020 and still under the supervision of the
25 county -- of the court in Will County, the defendant is also

1 alleged to have raped a minor victim in Ohio in July of 2020.

2 And so here, Your Honor, the government's arguments
3 that the defendant is a danger to the community is not
4 hyperbole; it is evidence of the defendant's actions, and on
5 that basis alone the government would be comfortable seeking
6 detention, but here we also have factors that lead the
7 government to argue that the defendant is -- would also be --
8 is a great risk of nonappearance.

9 As the pretrial services officer reported, the family
10 is working to hide the defendant if he is released. There are
11 numerous jail calls about getting the defendant a phone where
12 his number isn't already known to law enforcement, to moving
13 the defendant's minor children and sending them all to live
14 with a friend so that he can be off the grid, so to speak.

15 And certainly the -- pretrial services has also filed
16 an addendum as of I believe yesterday regarding a possible
17 third-party custodian, the defendant's brother. And the
18 government would submit that the third-party custodian doesn't
19 mitigate the concerns nor does it rebut the presumption.

20 The defendant's brother works, first of all, and is
21 outside of the home for a significant portion of the day. And
22 more importantly, based on law enforcement's investigation, we
23 believe that the brother's fiancée has a daughter who is under
24 the age of 18 and lives at the same residence, and therefore
25 releasing the defendant to that residence puts yet another

1 minor in danger.

2 Therefore, Your Honor, for the reasons that I've
3 stated, the government moves that the Court remand the
4 defendant to federal custody and detain him during the pending
5 criminal proceeding.

6 THE COURT: All right. Thank you.

7 Mr. Leinenweber.

8 MR. LEINENWEBER: Thanks, Judge.

9 The prosecution's correct, my client has no prior
10 criminal history, he's had no convictions, and I don't believe
11 there's any bond forfeitures in his background. He certainly
12 does have the open cases, one in Ohio, one in Illinois.

13 My understanding from my review of the records in
14 both those places is that the detainers were issued because of
15 this new case, so I don't think it's a matter of two other
16 courts sitting and deciding that there's -- Mr. Boltz does
17 not -- that a bond could not be issued for him.

18 I do agree with the government that obviously if he
19 is released by Your Honor under any set of circumstances, he's
20 certainly going to have to go to Will County and he's going to
21 have to go to Ohio and he's going to have to deal with those
22 jurisdictions about whether a bond would be appropriate.

23 I do understand what the -- what the government has
24 indicated that the jail calls said. My investigations of that
25 is that it's not exactly as clear-cut as the government

1 would -- would propose that you believe, Judge. I think it
2 was more in the matter of, you know, if he has this case in
3 Illinois, his father was talking about him getting a place
4 here in Illinois if he had to stay in the jurisdiction.

5 In any event, Judge, the charges as the government
6 indicates are serious. There's no question about that, but I
7 don't believe that there is any doubt that my client would
8 appear if Your Honor were to place him on electronic -- strict
9 electronic home monitoring with his brother as the third-party
10 custodian.

11 I mean, obviously -- I believe his brother is on the
12 line if Your Honor wanted to inquire of him. I've told the
13 family -- I've not spoken to the brother, but I have told both
14 parents about what would be expected of a third-party
15 custodian. I think that that added -- added condition, Judge,
16 would -- would mitigate some of the circumstances that the
17 government's spoken about here, and it's our belief that
18 should Your Honor again release him to the custody of his
19 brother, we would put him on strict electronic home
20 confinement, that those factors would be enough to ensure the
21 safety of the community and ensure that he will appear before
22 the Court here in Chicago.

23 THE COURT: All right. Thank you. I don't need to
24 hear from the brother. There is a rebuttable presumption that
25 arises under 18 U.S.C. § 3142(e)(2) because the defendant is

1 charged with a crime that involves a minor victim. And
2 because there's a rebuttal presumption, it's the -- it's
3 presumed the defendant is a danger to the community, absent
4 evidence produced by the defense.
5     I don't think that rebuttal presumption has been met.
6 There's -- if for no other reason, then, while he was under
7 supervision in Will County for a similar crime, these acts are
8 alleged to occurred -- alleged to have occurred, and after
9 these acts were alleged to have occurred in the indictment
10 pending in Federal Court, he's alleged to commit another crime
11 involving a minor in July in Ohio.
12     The fact he has no prior convictions and no bond
13 forfeitures, the bond forfeiture I think is inevitably going
14 to happen were he to end up in front of an Ohio judge or a
15 Will County judge based on the conduct that's alleged in this
16 case. So the bond forfeitures will occur at some point if
17 he's ever brought back before those particular jurisdictions.
18     So I believe the -- there is no -- there has not been
19 sufficient evidence produced to rebut the presumption that the
20 defendant is a -- that there's no conditions or -- condition
21 or combination of conditions that will reasonably assure the
22 safety of the community, given the fact the defendant has been
23 charged with the crime he has been charged with.
24     Even more importantly -- and that's a standard
25 that's -- I find that by clear and convincing evidence because

there's been no rebuttal of the presumption. But the preponderance standard applies to risk of flight, whether or not there's any condition or conditions that will reasonably assure the appearance of the defendant as required.

And I've rarely, if ever, seen more clear-cut evidence of someone where there is no assurance his appearance will be -- can be guaranteed in any way by a third-party custodian or anyone else when he's on tape telling his mother, They can do all they want, they won't find me.

I don't know how that can be construed, Mr. Leinenweber, any way other than this defendant would flee and would hide and would not reappear to face what are very serious charges.

So I find based just on that tape conversation with his mother and with a variety of other -- no matter how you construe some of these other comments made that are contained in the supplemental report of the pretrial services officer, that one statement is unequivocal and can't be construed in any way that's consistent with the idea that he would ever appear voluntarily to answer these charges if I released him.

So for both the -- I find by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person in the community and by a preponderance of the evidence that no condition or combination of conditions or release will

1 reasonably assure the defendant's appearance as required.
2     Defendant is ordered detained.
3     Certainly, you can appeal that finding to
4 Judge Blakey, if you wish, but based on the reports of the
5 pretrial services officer and the arguments that I heard
6 today, those are the findings of the Court, and defendant is
7 ordered detained.
8     Anything additional from the government?
9     MS. BABU: Sorry, Your Honor, I was on mute.
10     No, Your Honor.
11     THE COURT: Mr. Leinenweber, anything additional?
12     MR. LEINENWEBER: No, Judge. And thank you for the
13 opportunity.
14     THE COURT: Thank you all. Bye-bye.
15   (Time noted: 12:26 p.m.)
16               CERTIFICATE
17   I certify that the foregoing is a correct transcript from
18 the record of proceedings in the above-entitled matter.
19 */s/ Elia E. Carrión*        *28th day of October, 2021*
20 *Elia E. Carrión*              *Date*
   *Official Court Reporter*
21
22
23
24
25