UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 734 |
| v. | |
| ANDREW BOLTZ | Honorable John Robert Blakey |

**GOVERNMENT'S CONSOLIDATED MOTIONS IN LIMINE**

The United States of America, by its attorney, Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, respectfully submits the following consolidated motions *in limine*.

## I.    INTRODUCTION AND BACKGROUND

### A.    Charged Conduct Regarding Victim A

Defendant Andrew Boltz is charged with communicating with a minor girl (Victim A) via text message and Snapchat to request and receive images of Victim A's genitalia on five separate occasions. Doc. 110. Specifically, the superseding indictment charges the defendant with four counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1). *Id*.

Defendant and Victim A began communicating via Omegle, a social media application, in December 2019 and began almost immediately to have conversations of a sexual nature. On or about January 12, 2020, defendant and Victim A began communicating by Snapchat, a mobile social media application. They also communicated by text message. During the course of these communications,

1

defendant persuaded, used, and enticed Victim A into sending images of her genitals to defendant. At defendant's direction, Victim A captured images of herself using her cell phone and sent those images to the defendant with through Snapchat or text message.

**B.     Proffer of Evidence Regarding Minor B**

Prior to the instant case, defendant was charged with child abduction in the Circuit Court of Will County. According to local law enforcement, on or about September 4, 2019 (approximately four months before the conduct in the instant case occurred), defendant lured Minor B, a 13 year-old girl, into his car and drove her from Will County, Illinois to Ohio without the consent of her parents. Defendant and Minor B stopped for 30 minutes at a truck stop in Indiana before continuing on to Ohio. The charges against the defendant are still pending in the Circuit Court of Will County.

**C.     Proffer of Evidence Regarding Minor C**

In July 2020, approximately six months after the conduct in the instant case occurred, defendant was charged in state court in Ohio with unlawful sexual conduct with a minor and child pornography offenses. According to local law enforcement, in approximately June or July 2020, the defendant communicated via Omegle with Minor C, a 13-year-old girl residing in Norwalk, Ohio. The defendant is alleged to have induced Minor C to send multiple sexually explicit photos of herself to the defendant by text message. Additionally, on or about July 3, 2020, according to local law enforcement, the defendant had sex with the 13-year-old Minor C. The state charges against the defendant in Ohio are also still pending.

### D.     Procedural History

On October 15, 2020, Magistrate Judge Finnegan authorized the complaint charging the defendant with one count of sexual exploitation of a minor and issued a warrant for the defendant's arrest. Doc. 1, 3. The grand jury returned an indictment charging the defendant with sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a), on December 1, 2020. Doc. 22. On August 8, 2022, the grand jury returned a superseding indictment charging the defendant with four counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1).

The trial is scheduled to begin on October 2, 2023.

## II.    MOTION FOR PROTECTIVE ORDER FOR CHILD WITNESSES

Throughout the trial, the government requests that the full name of the minor victim, and the adults associated with the victim, should not be used. Instead, the parties should reference the minor victim as Victim A, and any minor witnesses as Minor B and Minor C, and use only the adult witnesses' first names and their last initial for witnesses that are relatives of the identified minors.[1] The parties have met and conferred, and the defendant does not object to this motion.

In order to protect child witnesses who testify in court, Congress enacted Title 18, United States Code, Section 3509. Employees of the government, the defendant and his counsel, members of the jury, and employees of this court are to "keep all

---

[1] While preparing this case for trial, the government may amend its request on how to reference Victim A during trial based on her preference.

documents that disclose the name or any other information concerning a child" from dissemination to persons who are not participants in the criminal proceedings. 18 U.S.C. § 3509(d)(1)(A)(i). Significantly, Section 3509 requires all filings disclosing the name or other identifying information of a child to be filed under seal without the necessity of obtaining a court order. 18 U.S.C. § 3509(d)(2). Section 3509 further provides that any person may move the Court to "issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child." 18 U.S.C. § 3509(d)(3)(A).

A "child" is defined as a person who is or alleged to be under the age of 18. 18 U.S.C. § 3509(a). In particular, the Court may order that the testimony of a child, and that of any other witness whom the summoning attorney anticipates will divulge the name or other identifying information of a child, be taken in a closed courtroom. 18 U.S.C. § 3509(d)(3)(B).

In the instant case, Victim A meets the statutory definition of "child," as she was a minor (sixteen years old) during the alleged conduct. Similarly, potential witnesses, Minor B and Minor C, may be referenced at times throughout the trial; they were fourteen years old and thirteen years old respectively, at the time of alleged conduct.

It would be severely detrimental to the psychological and emotional well-being and reputation of minors involved in this criminal case to have their identities

revealed in public documents. Accordingly, the government requests that any reference to the names of the minors, and the adults associated with them (*i.e.* their parents or guardians), and any other information concerning the child's identity be redacted from the record and replaced with the initials of the testifying witness or Victim A, Minor B, and Minor C.

For the reasons set forth above, the government respectfully requests that its motion for protective order under 18 U.S.C. § 3509(d)(3) be granted and counsel be instructed to reference the minors as Victim A, and Minors B, and C, and their adult relatives by their first name and last initial only, as outlined above.

The defendant does not object to this motion.

## III.  MOTION TO PREVENT THE PUBLIC DISPLAY OF IMAGES DEPICTING MINORS ENGAGED IN SEXUALLY EXPLICIT CONDUCT DURING TRIAL

The Court should prevent the public display of images depicting the minor victims engaged in sexually explicit conduct during trial by preventing publication of such images to the gallery in the courtroom.[2] "There is no doubt that criminal trials are public events and that weighty concerns about the fairness and integrity of the proceedings require that criminal trials be open to the public." *United States v. Kerley*, 753 F.2d 617, 620 (7th Cir. 1985). The presumption of openness in criminal trials "is

---

[2] The images that the government intends to introduce into evidence and publish at trial will represent a portion of the images depicting minors engaged in sexually explicit conduct retrieved from defendant or the minor's social media accounts or electronic devices. Accordingly, in total, the government will publish approximately twenty images of child exploitation material. Prior to trial, the government will make the images available for the Court's review.

not absolute, however." *United States v. Gupta*, 699 F.3d 682, 687 (2d Cir. 2012). "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Sup. Ct.*, 464 U.S. 501, 501-02 (1984). The parties have met and conferred, and defendant does not object to this motion.

Here, the overriding interest is the protection of the victim depicted in the sexually explicit images that the government intends to introduce at trial. The Supreme Court has found that such images create a permanent record of a victim's abuse, and the very existence of which "causes the child victims continuing harm by haunting the children in years to come." *Osborne v. Ohio*, 495 U.S. 103, 111 (1990). Victims of child pornography often write about their ongoing anxiety and fear that people who see them in public places will recognize them from the photographs that were taken of them as they were exploited. *See Improving the Response to Victims of Child Pornography, Executive Summary*, The National Center for Victims of Crime at 7, available at https://victimsofcrime.org/doc/Policy/improving-response-to-vcp_executive-summary.pdf?sfvrsn=2 (last visited on September 10, 2023). Although the children cannot control that these images exist, this Court can prevent the images from being publicly displayed during trial.

The government has narrowly tailored its request to serve the victim's interests. The only accommodation that the government seeks is for the Court to limit publication of the sexually explicit images to the jury and trial participants while avoiding publication to the gallery. The government is not asking for any limitation

6

on testimony describing such images. Requests to limit publication of child pornography are commonly granted. *See United States v. Troup*, No. 12-36, 2012 WL 3818242, at *6 (N.D. Ind. Aug. 31, 2012) (limiting display of child pornography images to the jury and trial participants and finding that "[t]here is no particularly compelling reason why the public would need to see child pornography in the gallery during trial, and it would be detrimental to the minors depicted therein to put their victimization on display").[3]

Further, preventing the display of child pornography images to the public does not constitute plain error. *United States v. Killingbeck*, 616 F. App'x 14, 16 (2d Cir. 2015) (finding no plain error where "[e]ven assuming that restricting the display of trial exhibits to the courtroom audience constitutes a partial 'closure' for Sixth Amendment purposes, the government presents substantial reasons for doing so-limiting the continuing harm to victims of child pornography"); *United States v. Boyle*, 700 F.3d 1138, 1144 (8th Cir. 2012) (finding no plain error where district court permitted the government to turn off a monitor facing the gallery during the display of allegedly sexually explicit images).

The defendant does not object to this motion.

---

[3] The government is aware of an oral motion by the government to limit publication of child pornography being granted in the following cases: *United States v. Richardson*, 13 CR 686 (Judge Dow); *United States v. Gabriel*, 13 CR 718 (Judge Tharp); *United States v. Norweathers*, 09 CR 1047 (Judge Lefkow); *United States v. Berg* (07 CR 856); *United States v. Burns*, 07 CR 556 (Judge Gottschal); and *United States v. Conrad*, 05 CR 931 (Judge St. Eve). In *United States v. Davis*, 14 CR 659, Judge Feinerman ruled that child pornography images would not be displayed to the gallery, but enabled anyone in the gallery to assert their First or Sixth Amendment rights and make a request to view the materials.

7

## IV. MOTION TO ALLOW THE USE OF AN ANIMAL-ASSISTED THERAPY DOG IN WITNESS ROOM DURING TRIAL

The government moves to allow therapy dogs to comfort Victim A in the witness room at trial. The parties have met and conferred, and defendant does not object to this motion.

Research shows that human-animal interactions can have both psychological and physiological benefits. "Such studies have shown that the mere presence of a friendly animal can result in decreased anxiety and lessened sympathetic nervous systems arousal. Benefits include reduced blood pressure, lowered heart rate, a decrease in depression, increased speech and memory functions, and heightened mental clarity." Debra S. Hart-Cohen, *Canines in the Courtroom*, GPSolo, July/August 2009, at 55, *available at* https://chutzpahlawn.com/wp-content/uploads/2022/01/JulyAug2009GPSOLO.pdf.

Courthouses and child advocacy centers across the country use therapy dog programs to provide victims, most frequently children, emotional support through trial. *Id*. at 54-56. Frequently, this means the therapy dog accompanies the child on the stand during testimony. *Id*.; *see also Spence v. Beard*, 2015 WL 1956436, at *5 (S.D. Cal. Apr. 29, 2015) (therapy dog sat at child's feet and behind the stand during the prosecution's case-in-chief).

Here, it should go without saying, that confronting the man who sexually exploited her and telling a courtroom full of strangers about the worst parts of her life will be an extremely stressful event for the minor. As such, the minor could use

the emotional and physiological benefits that interactions with an animal-assisted therapy team could provide. The therapy dogs and their handlers would not be present for any interviews or know anything about the case other than the minor was a testifying victim. The team would merely serve as a therapeutic distraction for the minor. Moreover, the United States is not requesting the presence of a therapy dog with the minor on the stand while she testifies, but only that she be allowed to have an animal-assisted therapy team with her in the witness room at the courthouse during the trial.

The minor has indicated that she desires an animal-assisted therapy team to be with her in the witness room during the trial.

Accordingly, the United States respectfully requests that this motion be granted and that the Court allow the use of animal-assisted therapy dogs in the witness room of the courthouse during the trial.

## V.  MOTION TO BAR CROSS-EXAMINATION OR THE ADMISSION OF EVIDENCE REGARDING THE GENERAL VERACITY OF INDIVIDUALS ENGAGED IN ONLINE COMMUNICATIONS

The government moves to bar defendant from admitting evidence regarding the general veracity of individuals engaged in online communications, including through the cross-examination of government witnesses. In *United States v. Taylor*, 777 F.3d 434 (7th Cir. 2015), the court upheld a district court's limitation of a defendant's line of questioning that related to "the general veracity of chat-room users." The court concluded that the district court judge "appropriately excluded questions about the officers' observations of other chat-room users" because the link

between the officers' observations of general chat-room behavior and defendant's state of mind regarding the minors in that case was, "tenuous at best," and questions regarding general online use "was speculative and potentially misleading." *Id.* The parties have met and conferred, and defendant's position to this motion is unknown at this time.

Here, the jury will see specific messages between defendant and Victim A; they will also see images that defendant exchanged with Victim A. Any evidence regarding the broader truthfulness of other online users on other forums is unavailing and irrelevant to the jury's determination.

## VI. NOTICE AND MOTION UNDER FED. R. EVID. 404(B) TO ADMIT OTHER ACTS EVIDENCE[4]

### A. Evidence Regarding Minor B

During his communications with Victim A, defendant referred to his pending case in Will County related to Minor B, and even directed Victim A to "google" his name and locate press reports on his pending case. According to Victim A, defendant explained his pending charges as a misunderstanding and persuaded Victim A that he was just helping Minor B from an abusive situation. Further, while traveling back and forth from Ohio to Illinois for court appearances in Will County, defendant told Victim A that he was doing so. The government seeks to introduce defendant's

---

[4] Rule 404(b) requires "reasonable notice" upon the defendant's request, this motion filed over 14 days before trial fulfills that requirement.

statements to Victim A regarding the Will County case as direct evidence of the crimes charged.

### 1. Defendant's Explanations of His Conduct With Minor B is Direct Evidence of the Crimes Charged in the Indictment

Defendant's representations and explanations about his conduct in the Will County case are direct evidence of his methods and means of persuading Victim A into engaging in sexually explicit conduct. Defendant normalizes his relationship with Victim A by giving her an example of his prior relationship with Minor B, lowering her inhibitions, and thereby earning her trust. Defendant's characterizations of conduct with Minor B are therefore direct evidence of means he uses to entice and persuade Victim A.

### 2. Extrinsic Evidence of the Pending Will County Case Prove Defendant's Identity

Absent a stipulation that defendant had a pending unrelated Will County case which required his travel, on occasion from Ohio to Illinois, the government seeks to introduce limited evidence of defendant's pending Will County case in its case in chief solely for the purpose of corroborating his representations to Victim A in his messages that prove his identity. The government does not seek to introduce any of the underlying investigation (other than defendant's statements to Victim A) regarding the Will County Case, but merely that there was a pending case and on certain dates defendant's presence was required in court.

The defendant's position to the admission of evidence regarding Minor B is unknown.

11

### B.     Other Acts Evidence Regarding Minor C

At this time, the government does not know what defendant's defense will be at trial. Potential defenses may include that the government has failed to prove identity (*i.e.*, that defendant was the user of the phone number  or the Snapchat account  used to communicate with Victim A); that defendant did not knowingly engage in the sexual exploitation of the minor; or that his conduct was not intended to cause the minor to engage in sexually explicit conduct. Should defendant present such defenses, the government seeks to introduce evidence of the messages between defendant and Minor C located on defendant's cell phone to rebut such a defense.

The defendant objects to the admission of evidence regarding Minor C as premature.

### C.     Applicable Law

Federal Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at the trial.

The admission of evidence under Rule 404(b) is within the sound discretion of the trial court. A trial court's evidentiary rulings will not be reversed on appeal absent

a clear showing of abuse of discretion. The Seventh Circuit sitting *en banc,* adopted

"a more straightforward rules-based approach," which is summarized as follows:

> [T]o overcome an opponent's objection to the introduction of other-act evidence, the proponent of the evidence must first establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way. *See* Fed. R. Evid. 401, 402, 404(b). Other-act evidence need not be excluded whenever a propensity inference can be drawn. But its relevance to "another purpose" must be established through a chain of reasoning that does not rely on the forbidden inference that the person has a certain character and acted in accordance with that character on the occasion charged in the case. If the proponent can make this initial showing, the district court must in every case assess whether the probative value of the other-act evidence is substantially outweighed by the risk of unfair prejudice and may exclude the evidence under Rule 403 if the risk is too great. The court's Rule 403 balancing should take account of the extent to which the non-propensity fact for which the evidence is offered actually is at issue in the case.

*United States v. Stacy,* 769 F.3d 969, 974 (7th Cir. 2014) (citing *United States v. Gomez*, 763 F.3d 845, 853, 860 (7th Cir. 2014) (*en banc*)).

In *Gomez* and its progeny, the Court of Appeals explained that Rule 404(b) covers the entire process of using other-act evidence, and that process has four components:

(1) This Court must determine whether the evidence is relevant under Rules 401 and 402;

(2) Then determine whether it is categorically inadmissible under Rule 404(b);

(3) If not "foreclosed by Rule 404(b)," this Court must determine, if the evidence should be excluded under Rule 403;

(4) Finally, if the evidence is admissible, a proper limiting instruction should be given to the jury about permissible and forbidden inferences.

*United States v. Lawson*, 776 F.3d 519, 522 (7th Cir. 2015).

### D. The Proffered Evidence is Relevant to Non-Propensity Purposes

The proffered evidence involving Minor C is highly relevant for the non-propensity purpose of proving defendant's identity, motive, intent, and knowledge. Defendant's sexual messages with Minor C are probative to the jury's determination that he used, persuaded, induced, enticed, and coerced Victim A, as charged in Counts One, Three, Four, and Five to produce child pornography and that he knowingly received child pornography, as charged in Count Two. In *United States v. Sebolt*, 460 F.3d 910 (7th Cir. 2006), the court upheld the admissibility of the defendant's statement through chat logs that he sexually molested a young male relative in the past. *Id.* at 917. The court stated, "[p]rior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of defendant's motive to commit a charged offense involving sexual exploitation of children." *Id.* (citing *United States v. Cunningham,* 103 F.3d 553, 556 (7th Cir. 1996)).

As noted above, at this point, it is unclear what the defense will be in this case. The defendant may assert in his defense that another person committed the offenses charged in the indictment, or that he did not intend for Victim A to engage in sexually explicit conduct, or that he had no sexual interest in minors at all but believed this dialogue to be a fantasy role play, therefore, the proffered evidence "may serve to

14

identify the defendant to the crime." *Sebolt*, 460 F.3d at 917. Simply put, depending on the type of defense the defendant asserts, the government may want to introduce evidence of his other acts with Minor C to rebut defendant's claims.

Further, the proffered evidence is also relevant to show defendant's motive and intent to produce pornographic images of minors. In *United States v. Stokes*, the Seventh Circuit emphasized its support of the admission of a defendant's past acts of child molestation "to show motive in child-pornography cases." 726 F.3d 880, 897 (7th Cir. 2013) *cert. denied,* 134 S. Ct. 713, 187 L. Ed. 2d 573 (2013) (citing *United States v. Russell,* 662 F.3d 831, 846–47 (7th Cir. 2011) (holding that prior molestation was allowed under Rule 404(b) to show defendant's motive in taking obscene photographs of children); *Sebolt,* 460 F.3d 910, 917 (7th Cir. 2006) (holding that prior acts of sexual misconduct with a child are admissible to establish defendant's sexual interest in children and motive under Rule 404(b)). Evidence that defendant engaged in sexual messages with another minor directly addresses his identity, motive, and intent to commit the crimes charged in the indictment.

The striking similarity of the proffered evidence between Minor C and Victim A, which both began on the same online forum – Omegle, and then continued through text messages, using the same phone number he used with Victim A, and Snapchat, using the same Snapchat user account he used with Victim A, is remarkable.

Further defendant's pandering to the minors' interest, by complimenting the minors through effusive flattery, and soliciting sexually explicit images from Minor C and Victim A, shows a common plan or scheme of "grooming" minors for his own

15

sexual gratification. Child sexual abuse can be accomplished by several means, and is often carried about through a period of "grooming." *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011) (*citing United States v. Berg*, 640 F.3d 239, 252 (7th Cir. 2011)). "Grooming" refers to deliberate actions taken by a defendant to expose a child to sexual conduct or material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *Id.* (citing *Doe v. Liberatore*, 478 F. Supp. 2d 742, 749-50 (M.D. Pa. 2007) and Sana Loue, Legal and Epidemiological Aspects of Child Maltreatment, 19 J. LEGAL MED. 471, 479 (1998)). Additionally, as noted in *Chambers*, "[c]hild exploitation statutes target the sexual grooming of minors as well as the actual sexual exploitation of them and the focus is on the intended effect on the minor rather than necessarily the defendant's intent to engage in sexual activity." *Id. See also United States v. Hensley*, 574 F.3d 384, 391 (7th Cir. 2009); *United States v. Gladish*, 536 F.3d 646, 649 (7th Cir. 2008).

### E.    Rule 403 Balancing

Once this Court finds that the evidence is relevant pursuant to Rules 401 and 402 and the purpose for which the evidence is being offered is permissible under 404(b), it must also find that the evidence is "not substantially more unfairly prejudicial than probative under Rule 403." *Gomez,* 763 F.3d 845, 852-53. This Court enjoys a great deal of latitude in determining whether to admit evidence over a Rule 403 objection and review of this decision is for abuse of discretion. *See United States v. Williams*, 238 F.3d 871, 874 (7th Cir. 2001). "[T]he court's admission of evidence

16

under Rule 403 of the Federal Rules of Evidence is entitled to special deference. Only in an extreme case are appellate judges competent to second-guess the judgment of the person on the spot – the trial judge." *Id.* at 991, *quoting United States v. Gardner*, 211 F.3d 1049, 1055 (7th Cir. 2000) (internal citations and quotation marks omitted). "Evidence is unfairly prejudicial if it induces the jury to decide the case on an improper basis rather than on the evidence presented." *United States v. Haldar,* 751 F.3d 450, 458 (7th Cir. 2014) (quoting *United States v. Conner,* 583 F.3d 1011, 1025 (7th Cir. 2009)).

There is an unavoidable, inherent risk of prejudice against the defendant every time a party seeks to admit evidence of other acts. Indeed, the United States would not seek to admit irrelevant facts, additionally, in child sex crimes, there is always a risk of prejudice to the defendant from the moment the court reads the indictment to the jury. However, "excluding other-acts evidence on that basis would make it nearly impossible to ever admit such evidence." *United States v. Schmitt*, 770 F.3d 524, 535 (7th Cir. 2014) *cert. denied,* 135 S. Ct. 1537, 191 L. Ed. 2d 565 (2015). The court's determination is not any risk of prejudice, but whether the other acts pose an unfair risk of prejudice. This Court can take steps to minimize the risk by considering whether the fact "is seriously contested and whether a jury instruction could cure the potential prejudicial effect." *Gomez,* 763 F.3d at 857, 860; *United States v. Jones,* 455 F.3d 800, 809 (7th Cir. 2006) (limiting instructions are effective in reducing or eliminating any possible unfair prejudice from the introduction of Rule 404(b) evidence).

17

The Seventh Circuit has repeatedly recognized the substantial prejudice that the admission of other acts of child sexual exploitation necessarily poses to any defendant; yet, the court has "regularly sustained the admission of such evidence when probative of a defendant's motive, intent, or other pertinent (and admissible) factor." *United States v. Roux*, 715 F.3d 1019, 1026 (7th Cir. 2013); *United States v. Chambers,* 642 F.3d 588, 595–96 (7th Cir. 2011). In *Chambers*, the Seventh Circuit affirmed the admission of two chats with two other undercover agents as 404(b) evidence to show defendant's sexual interest or motive to commit the crimes charged. The court rejected defendant's argument that this evidence was "sure to disgust the jury toward [the defendant]." Instead, the court finding no abuse of the trial court's discretion, held that "[s]exual abuse of a child or the attempt thereof is a disgusting crime and any evidence of it is no doubt unfavorable to the defendant, but here it was not unfairly prejudicial." *Chambers*, 642 F.3d at 596.

Here, the jury will hear testimony from minor Victim A and see images of child pornography that defendant caused to be produced. The proffered conduct is no more prejudicial than the nature and circumstances of the charged conduct. The government is not seeking to introduce defendant's sex misconduct with Minor C, nor will the government introduce sexually explicit images of Minor C. The government will only introduce the sexual messages between Minor C and the defendant located on his cellular device, and only as necessary in rebuttal, if defendant advances certain defenses at trial. Therefore, the risk of unfair prejudice is minimal.

## VII. MOTION TO BAR JURY NULLIFICATION ARGUMENTS

The government respectfully moves this Court to preclude the defense from arguing or presenting evidence designed to elicit jury nullification.

It is improper for a defendant to suggest that the jury should acquit a defendant even if it finds that the government has met its burden of proof. *See, e.g., United States v. Laguna*, 693 F.3d 727, 730 (7th Cir. 2012); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006); *Smith v. Winters*, 337 F.3d 935, 938 (7th Cir. 2003) ("A defendant has of course no right to ask the jury to disregard the judge's instructions ('jury nullification')."); *United States v. Perez*, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant.").

Although the government cannot anticipate every form of "jury nullification" defendant may seek to inject, it moves to exclude the potential areas noted below, as well as any argument or questioning, no matter what its form, that, in effect, would "encourage a jury to acquit under any circumstances regardless of the applicable law or proven facts." *United States v. Anderson*, 716 F.2d 446, 450 (7th Cir. 1983).

### A. Penalties Faced by Defendant if He is Convicted

Defendant is charged with four counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a), which carries a minimum sentence of fifteen years, and a maximum of thirty years, imprisonment, and one count of receipt of child

pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1), which carries a minimum sentence of five years, and a maximum of twenty years, imprisonment. The Seventh Circuit has held that "arguing punishment to a jury is taboo." *See, e.g., United States v. Richardson*, 130 F.3d 765, 778 (7th Cir. 1997), *overturned on other grounds*, 526 U.S. 813 (1999); *United States v. Lewis*, 110 F.3d 417, 422 (7th Cir. 1997). Argument and evidence concerning punishment are improper because the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. *See, e.g., Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (footnote omitted) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975))); *Aliwoli v. Carter*, 225 F.3d 826, 830 (7th Cir. 2000); 7th Cir. Pattern Crim. Jury Instr. 4.08 (2020) ("In deciding your verdict, you should not consider the possible punishment for the defendant[s] [who [is; are] on trial]."). Mention of the potential penalties faced by a defendant—including possible imprisonment, restitution, or fines—would serve only the improper purpose of inviting the jury to consider the penal consequences of a conviction and, ultimately, nullification. They should accordingly be excluded. The parties have met and conferred and the defendant does not object to this motion.

### B. Motivations for Investigating or Prosecuting this Case

The government seeks to bar any evidence pertaining to why this case was charged at the federal rather than state level. The parties have met and conferred and the defendant does not object to this motion.

Claims of selective or vindictive prosecution are irrelevant to the merits. *United States v. Armstrong*, 517 U.S. 456, 463 (1996) ("A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution."). "In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Id.* at 464 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Accordingly, evidence bearing on the government's decision to prosecute is "extraneous and collateral" and, thus, properly excluded from trial. *United States v. Johnson*, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"). To the extent defendant wishes to raise these issues, he must raise them with the Court, not the jury. *See United States v. Jarrett*, 705 F.2d 198, 204–05 (7th Cir. 1983) (finding claims of selective prosecution must be raised before trial); *United States v. Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (finding that "the issue of selective prosecution is one to be determined by the court"). Defendant has filed no such motions. Accordingly, evidence and argument related to these issues, in any form, should be barred by the Court.

## C. Allegations or Claims of Outrageous Government Conduct

The Court should also preclude any evidence or argument related to so-called "outrageous government conduct." The Seventh Circuit has repeatedly held that

"[o]utrageous government conduct is not a defense in this circuit." *United States v. Stallworth*, 656 F.3d 721, 730 (7th Cir. 2011); *see also United States v. Boyd*, 55 F.3d 239, 241–42 (7th Cir. 1995) (stating that "the doctrine [of outrageous governmental misconduct] is moribund" (alteration in original) (quoting *United States v. Santana*, 6 F.3d 1, 4 (1st Cir. 1993))). Moreover, the issue of government misconduct is a matter of law for determination by the Court, and must be raised in the form of a pretrial motion. *See United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir. 1987) (noting that "[a]ll of the circuits that have considered the question have held that the issue of outrageous government conduct is not a jury question") (collecting cases).

Yet, there is a "tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." *United States v. Griffin*, 867 F. Supp. 1347, 1347 (N.D. Ill. 1994) (quoting *Sears v. Romiti*, 50 Ill.2d 51, 277 N.E.2d 705 (1971)). In these types of cases, the "thrust of the defense is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." *Id.* at 1347. In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts have granted motions in limine "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." *United States v. Shields*, No. 90 CR 1044, 1991 WL 236492, at *3 (N.D. Ill. 1991); *see also United States v. Boender*, No. 09 CR 186, 2010 WL 811296, at *3 (N.D. Ill. March 3, 2010) ("The Seventh Circuit does not recognize an outrageous government conduct

22

defense: the doctrine is more than moribund—it is stillborn because it never had any life; and it certainly has no support in the decisions of this court, which go out of their way to criticize the doctrine."); *United States v. Katz*, No. 92 CR 94, 1992 WL 137174, at \*5 (N.D. Ill. June 15, 1992); *United States v. Finley*, 708 F. Supp. 906, 913-14 (N.D. Ill. 1989) (granting motion in limine to preclude evidence "designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation"). Accordingly, the government moves to bar the defense from introducing evidence or argument of outrageous government conduct.

The defendant objects to this motion as overly broad.

### D. Defendant Should Be Precluded From Defining Reasonable Doubt.

Neither courts nor attorneys may attempt to define the term "reasonable doubt" for a jury. *E.g.*, *United States v. Anderson*, 303 F.3d 847, 857 (7th Cir. 2002); *United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir. 1999) ("[I]t is improper for attorneys to attempt to define the term [reasonable doubt]."); *United States v. Reynolds*, 64 F.3d 292, 298 (7th Cir. 1995); *United States v. Alex Janows & Co.*, 2 F.3d 716, 722–23 (7th Cir. 1993) ("It seems simple enough; we admonish counsel, do not define 'reasonable doubt' to a jury."). This is because any attempt to define the term "presents a risk without any real benefit"—that is, any definition of the term often leans toward "misleading refinements" that "weaken and make imprecise the existing phrase." *Reynolds*, 64 F.3d at 298; *see also, e.g.*, *Anderson*, 303 F.3d at 857 (government argument was proper because "it was invited by defense counsel's own

23

improper attempt to define the reasonable doubt standard"); *United States v. Blackburn*, 992 F.2d 666, 668 (7th Cir. 1993) (noting that definitions of reasonable doubt have a likelihood of "confus[ing] juries more than the simple words themselves").

For these reasons, the government asks this Court to admonish the parties not to attempt to define "reasonable doubt" for the jury.

The defendant's position on this motion is unknown.

### E. Defendant Should Be Precluded From Arguing that Victim Consented to her Victimization.

Consent of the minor victim not a defense to sexual exploitation of minor. A minor lacks the capacity to consent, and so sexual activity with a minor is always "without consent." *United States v. Rogers*, 587 F.3d 816, 820 (7th Cir. 2009) *citing Doe v. Smith*, 470 F.3d 331, 345 (7th Cir. 2006) (recognizing the "inherent risk of exploitation when an adult solicits sex from a minor who, due to his or her under-developed sense of judgment and susceptibility to coercion, lacks the capacity to consent" in "so-called cyber-molester" cases); *United States v. Street*, 531 F.3d 703, 708 (8th Cir. 2008) (consent is not a defense to sexual exploitation of a minor, therefore the minor's willingness to engage in the acts is irrelevant); *United States v. Raplinger*, 555 F.3d 687, 692 (8th Cir. 2009) (same). The minor's willingness to engage in sexual activity is irrelevant because, by law, a minor is unable to consent to sexual activity. *United States v. Dhingra*, 371 F.3d 557, 567 (9th Cir. 2004) ("The victim's willingness to engage in sexual activity is irrelevant, in much the same way

that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molestation."). The government, therefore, requests that this Court admonish the defendant to refrain from arguing that Victim A consented to the sexual exploitation or implying through cross examination that Victim A was a willing participant to her exploitation.

The defendant's position on this motion is unknown.

## VIII. MOTION TO PRECLUDE ARGUMENT CONCERNING MISSING WITNESSES

It is within the Court's discretion to prohibit argument by either side concerning missing witnesses not under the control of either side. *United States v. Sblendorio*, 830 F.2d 1382, 1394 (7th Cir. 1987). "The reasons for not calling witnesses are so many and so complex—from . . . concern about the witness's appearance and demeanor to concern about the content of the testimony to a belief that the witness would invoke the privilege against self-incrimination—that a full exploration could take the trial far afield." *Id*. Thus, "when [a] witness is equally available to both sides, the preferred practice is to preclude the [missing witness] argument rather than to leave the jury free to speculate about a lot of non-evidence." *United States v. Simpson*, 974 F.2d 845, 848 (7th Cir. 1992). "The traditional position, limiting comment by judge or counsel to a witness under the control of the adverse party . . . is sound." *Sblendorio*, 830 F.2d at 1394. Therefore, the government requests that the Court prohibit defendant from introducing evidence about or arguing that any relevant inference can be drawn from, the fact that additional witnesses did not testify.

25

Alternatively, if the Court allows defendant to introduce evidence or make any such argument regarding missing witnesses, the government seeks permission to respond to this argument appropriately. As the Seventh Circuit has held, ordinarily, a prosecutor may reply to "an argument by the defense that the absence of some witness counts against the prosecution" by pointing out that the defense has the same subpoena power as the government. *Sblendorio*, 830 F.2d at 1392–93.

The defendant objects to this motion.

## IX. MOTION TO BAR COMMENTS REGARDING DISCOVERY

The government respectfully moves this Court to preclude defendant from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters in the presence of the jury. Requests for, and motions related to, discovery made in front of the jury are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. *See United States v. Mandell*, No. 12 CR 842, 2014 WL 287520, at *3 (N.D. Ill. Jan. 27, 2014); *United States v. Dochee*, No. 08 CR 108-4, 2009 WL 102986, at *1 (N.D. Ill. Jan. 15, 2009) (granting the government's motion *in limine* to exclude comments on discovery because it "could create the impression that the opposing party is withholding information"). In the same vein, evidence or argument related to missing evidence absent proof of bad faith is also improper. *See United States v. Folami*, 236 F.3d 860 (7th Cir. 2001). Therefore, discovery requests should be made to the Court or opposing counsel outside the

presence of the jury so that no prejudice results to either side. *See, e.g.*, *United States v. Gray*, No. 07 CR 166, 2010 WL 1258169, at *3 (N.D. Ind. Mar. 26, 2010).

The parties have met and conferred, and the defendant does not object to this motion.

## X. MOTION TO BAR COMMENTARY REGARDING EVIDENTIARY RULINGS

The government respectfully moves this Court to preclude counsel from referring to excluded evidence or commenting on the Court's evidentiary and pretrial rulings in front of the jury. It is improper for counsel to comment on excluded evidence or suggest that it might affect the jury's analysis had the Court admitted it. *See Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008) (holding that comments during opening statement on excluded evidence were improper); *Solles v. Israel*, 868 F.2d 242, 245 (7th Cir. 1989) (criticizing prosecutor's "improper remarks in front of the jury including commenting on excluded evidence"). Indeed, such comments are irrelevant to whether, on the basis of the evidence presented, the prosecution has proven its case beyond a reasonable doubt. The jury is not allowed to speculate on evidence it has not heard. Counsel may argue the propriety of evidence in motions in limine. Once the Court has ruled, however, the matter is concluded and counsel are not free to decide for themselves what evidence is actually admissible. *Rutledge v. Cook County*, No. 06 C 6214, 2009 WL 3187904, at *6 (N.D. Ill. Sept. 30, 2009).

The parties have met and conferred, and the defendant does not object to this motion.

## XI.    Motion to Preclude Any Argument or Evidence Relating to Alibi or Unavailability, Mental Defect, or Public Authority

Under the Federal Rules of Criminal Procedure, a defendant is required to provide the government with notice of: (1) any alibi or similar defense, including any defense asserting the defendant's unavailability on or near the dates named in the indictment (Rule 12.1); (2) any defense of a mental defect inconsistent with the state of mind required for the offense charged (Rule 12.2); and (3) any defense of public authority (Rule 12.3). Because defendant has not notified the government of his intent to raise any of these defenses, the government requests that he be prohibited from introducing evidence or argument of such defenses at trial.

The parties have met and conferred, and the defendant does not object to this motion.

## XII.    Motion to Exclude Argument or Evidence of Lawfulness or "Good Character"

The government respectfully moves this Court to preclude defendant from presenting evidence of, or making reference to, lawfulness, non-corrupt conduct, or prior good acts, except reputation or opinion evidence offered by character witnesses strictly in accord with Federal Rule of Evidence 405(a).[5]

---

[5] Even evidence offered under Rule 405(a) cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. *See* Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, i.e. be confined to the nature and extent of observation and acquaintance upon which the opinion is based.").

Defendant may seek to admit evidence that, on prior occasions, he acted in a lawful manner. He may further argue that, because he previously performed good acts, he could not have committed the charged offenses. "Evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment." *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012); *see also United States v. Heidecke*, 900 F.2d 1155, 1162 (7th Cir. 1990); *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); *United States v. Johnson*, No. 08 CR 466, 2011 WL 809194, at *4 (N.D. Ill. Mar. 2, 2011) ("[E]vidence of specific lawful acts of defendants is not properly introduced to show that defendants did not have the requisite intent to commit the crimes charged").

Federal Rule of Evidence 404(a)(1) further states that evidence of a person's character is not admissible for the purpose of proving a person's actions on a particular occasion except when evidence of a pertinent trait of character is offered by an accused or by the prosecution to rebut the same. Fed. R. 404(a)(2)(A). Thus, a character witness may not offer specific instances of conduct by defendant which would tend to support defendant's reputation. *See United States v. Giese*, 597 F.2d 1170 1188-94 (9th Cir. 1979) (holding that character witnesses must restrict their direct testimony to appraisals of defendant's reputation); *United States v. Hedgecorth*, 873 F.2d 1307, 1313 (9th Cir. 1989) ("While a defendant may show a characteristic

29

for lawfulness through opinion or reputation testimony, evidence of specific acts is generally inadmissible.").

The fact that defendant may not have engaged in online chats to sexually exploit a minor on another occasion, for example, is not proof that defendant did not do so in this case. Similarly, evidence that defendant committed specific instances of good conduct or lawful conduct are not proof that he did not commit the charged conduct.

Thus, any evidence or argument regarding defendant's alleged prior good acts or non-corrupt behavior should be excluded.

The defendant objects to this motion.

## XIII. No Lack Of Proclivity For Child Sex Abuse Evidence

Defendants in child exploitation cases frequently attempt to introduce irrelevant evidence—particularly expert testimony—that they do not meet the "profile" of a typical sex offender or pedophile. Whether defendant fits the alleged profile of a typical sex offender or pedophile has no probative value in assessing defendant's guilt of the charged conduct, is inherently prejudicial, and is therefore inadmissible. *See United States v. Powers*, 59 F.3d 1460 (4th Cir. 1995) (upholding district court's refusal to allow defendant charged with aggravated sexual abuse of minor to submit "expert" testimony that he did not fit the psychological profile of pedophile as irrelevant); *Barner v. State of Nevada*, 19 F.3d 25 (unpublished) (9th Cir. 1994) (testimony regarding pedophilia profile not probative since defendant not charged with being a pedophile); *Unites States v. Banks*, 36 M.J. 150, 161 (U.S. Court

of Military Appeals 1992) (use of any characteristic "profile" as evidence of either guilt or innocence in criminal trials is improper and both federal and state case law has "severely criticized attempts to introduce 'profile' evidence to establish guilt or innocence."); *United States v. Gillespie*, 852 F.2d 475, 480 (9th Cir. 1988) (holding that expert testimony about the typical characteristics of child molesters was impermissible propensity evidence and stating that such "testimony of criminal profiles is highly undesirable as substantive evidence because it is of low probativity and inherently prejudicial"); *United States v. Wells*, 879 F.3d 900, 920 (9th Cir. 2018) (holding that expert testimony on the defendant's profile was improperly admitted and noting "[o]ur law punishes people for what they do, not who they are" (quoting *Buck v. Davis*, 137 S.Ct. 759, 778 (2017))).

Furthermore, this type of evidence constitutes improper testimony on an ultimate issue of fact—that is, whether the defendant had the requisite mental state constituting an element of the offense or of a defense thereto. *See* Fed. R. Evid. 704(b); *United States v. Esch*, 832 F.2d 531, 535 (10th Cir. 1987) ("An expert may not substitute her judgment as to the defendant's state of mind by testifying that because of the defendant's personality, she would not have acted in a particular matter."); *United States v. Raymond*, 700 F. Supp. 2d 142, 155 (D. Me. 2010) (rejecting expert testimony that attempted to "predict individual intent. . . from patterns of isolated individual behavior that [the expert] has catalogued and categorized").

Defendant's character is not an essential element of the crime charged, and therefore evidence and testimony of specific instances of defendant's conduct (*i.e.*

31

times when he did not groom a minor for sexual activity) are not admissible. Fed. R. Evid. 405(b). Further, Fed. R. Evid. 404(a) prohibits the use of character evidence to prove that on a particular occasion a person acted in accordance with that character or trait.

The introduction of any character evidence must be tied to a pertinent character trait. Pertinent generally mean relevant, or determinative of a fact at issue for the jury. *United States v. Staggs*, 553 F.2d 1073, 1075 (7th Cir. 1977). General lawfulness is not permissible. *United States v. Reese*, 666 F.3d 1007, 1020 (7th Cir. 2012) (evidence that a defendant acted lawfully on other occasions is generally inadmissible to prove he acted lawfully on the occasion alleged in the indictment); *United States v. Mack*, 298 F.R.D. 349, 352 (N.D. Ohio 2014), aff'd, 808 F.3d 1074 (6th Cir. 2015) ("Evidence that an individual acted lawfully on other occasions not charged in the indictment is generally inadmissible in that it does not negate the charge that he acted with criminal intent on another occasion").

The parties have met and conferred, and the defendant does not object to this motion.

## XIV. MOTION TO EXCLUDE REFERENCES TO DEFENDANT'S HEALTH

Under Fed. R. Evid. 402, the Court should exclude as irrelevant all evidence regarding defendant's mental health and diminished capacity. In addition, this evidence should be excluded under Fed. R. Evid. 403, as it has no probative value and improperly invites the jury to consider sympathy for defendant.

32

Courts have noted that diminished capacity evidence is more properly raised at sentencing, and that any such evidence must be carefully scrutinized to ensure "that it is being offered to negate [specific] intent rather than to justify or mitigate the crime," and that it will not confuse or mislead the jury. *Biron v. United States,* No. 16-CV-108-PB, 2017 WL 4402394, at *4–6 (D.N.H. Oct. 2, 2017); *United States v. Martinez*, 923 F.3d 806, 815–16 (10th Cir. 2019) ("Courts must be cautious about admitting marginally relevant mental-health evidence because the jury may think that it provides an 'excuse' for misconduct or it may otherwise generate sympathy for the defendant." (citing *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)); *see also United States v. Lilley*, No. 15-6415, 2017 WL 7048806, at *4–5 (6th Cir. July 26, 2017) (concluding that the district court did not err in rejecting a jury instruction about the defendant's mental health issues where they did not negate the *mens rea* for the charged crimes).

The parties have met and conferred, and the defendant does not object to this motion.

Dated: September 12, 2023                    Respectfully submitted,

                                             MORRIS PASQUAL
                                             Acting United States Attorney

                             By:    */s/ Elham Peirson*
                                    ELHAM PEIRSON
                                    EDWARD A. LIVA, JR.
                                    Assistant United States Attorneys
                                    219 South Dearborn Street, Fifth Floor
                                    Chicago, Illinois 60604
                                    (312) 353-5300