## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

       v.

ANDREW BOLTZ,

       Defendant.

Case No. 20-CR-734

Judge John Robert Blakey

## **MEMORANDUM OPINION AND ORDER**

In a Superseding Indictment, Defendant was charged with four counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) (Counts I, III, IV, and V), and one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1). [111]. Following a six-day jury trial, Defendant was found guilty on all counts. [169].

After the close of the Government's case, Defendant orally moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a), or a dismissal of the indictment based upon the destruction of evidence. [176] at 490:16–294:3.[1] Following the return of the verdict, this Court denied Defendant's Rule 29 motion, but Defendant's motion for dismissal remained under advisement. *Id.* at 630:7–8.

On February 9, 2024, Defendant filed a post-trial motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. [182]. Because none of Defendant's arguments have merit, this Court denied Defendant's Rule 33 motion, [188], and now denies Defendant's motion to dismiss the indictment as well. The Court's findings with respect to these motions are set forth below.

---

[1] Defendant raised the destruction of evidence issue during argument on his Rule 29 motion, but noted he was moving "on a wholly independent basis" to dismiss the indictment on that ground, "whether under Rule 29 or not." [176] at 88:21–89:4. Because the destruction of evidence issue does not alter this Court's finding that the evidence at trial was sufficient to convict Defendant on all counts for Rule 29 purposes, this Court considers Defendant's motion for dismissal of the indictment together with his Rule 33 motion below.

## I.    The Evidence at Trial

The events presented at trial began in January 2020, when Defendant, a 25-year-old adult male, met the minor victim, Arianna S., on Omegle, an internet website that allowed users to video chat with strangers. [175] at 73:25–74:3. Defendant and Arianna S. first video chatted on Omegle for two to three hours, *id.* at 78:19–21, and then moved their conversations to Snapchat, phone and video calls, and text messages. *Id.* at 73:25–74:15. Arianna S. testified that soon after she and Defendant began messaging, they spoke about "everything," from when she woke up to when she went to bed. *Id.* at 82:19–25. Defendant and Arianna S. had conversations about "big" things, such as their families and her mental health, but also small details, such as the food the victim made on a given day. *Id.* at 82:19–25. They also talked about a future together, including where they would live, and whether they would have children of their own together. *Id.* at 145:22–125:11. During this time, Defendant knew Arianna S. was only 16, that she was in high school, that she did not possess a driver's license, and ultimately that he "could go to jail" for having relations with the victim "very easily." *Id.* at 90:10–11; 98:22–24; 99:23; 91:20–21; 123:20–22.

The bulk of the Government's evidence at trial consisted of sexually explicit "Snapchat" and text messages exchanged between the Defendant and Arianna S., including photographs. In those conversations, on multiple occasions Defendant requested that Arianna S. send him sexually explicit photos and videos, at times directing the production of this child pornography. Arianna S. testified that there were instances where she and Defendant were on video chat, and Defendant instructed her on specific sexual actions to take while she "responded" over video. *See* [175] at 153:1–4. The message exchanges also revealed some of the methods Defendant used to "groom" Arianna S. into sending sexually explicit material. For example, after learning Arianna S. liked kids, the Defendant sent Arianna S. photos of his children for the background of her phone and told Arianna S. that she could claim his children as her own. *See id.* at 129:11–130:8. Defendant also told Arianna S. he loved her and sent sexually explicit pictures of himself, inviting her to return the favor. *Id.* at 143:17–25, 144:15–24.

Other trial evidence included the testimony of Arianna S.'s mother explaining how she discovered her daughter's illicit relationship with Defendant, [174] at 103:1–121:5. Various law enforcement witnesses also testified regarding their roles in the investigation and the evidence it revealed. Given that much of the evidence constituted Snapchat messages, FBI Agent Nicola Cina's testimony detailed Snapchat's unique characteristics and features, including how users of the application communicate. [174] at 130:2–141:11. The Government also offered testimony of the mother of Defendant's children, Stephine Payne, who identified the

Defendant's genitalia in the explicit photographs he sent to the victim. *Id.* at 44:1–45:19. Defense counsel's cross-examinations of Ms. Payne and another law enforcement witnesses challenged whether some of the sexual photographs and messages sent to Arianna S.'s phone depicted the Defendant or were sent by him. The Government subsequently offered evidence that Defendant engaged in a markedly similar course of conduct with another minor victim in Ohio. Following all this evidence, a jury convicted the Defendant on all counts.

## II.     Rule 29 Findings

Rule 29 requires district courts to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction," either after the government has closed its evidence or after a jury has rendered a verdict of guilty or been discharged. Fed. R. Crim. P. 29(a). In applying Rule 29, the Court must consider the evidence in the light most favorable to the Government. *United States v. Garcia*, 919 F.3d 489, 496 (7th Cir. 2019). The Court cannot "reweigh the evidence," nor can it undertake its own assessment of witness credibility. *United States v. Peterson*, 823 F.3d 113, 1120 (7th Cir. 2016) (citing *United States v. Pribble*, 127 F.3d 583, 590 (7th Cir. 1997)). Although successful challenges exist, they are "rare," such that courts have said that a defendant seeking a judgment of acquittal faces a "nearly insurmountable hurdle." *Garcia*, 919 F.3d at 496 (citing *United States v. Johnson*, 874 F.3d 990, 998 (7th Cir. 2017)).

### A. Sufficiency of the Evidence

Defendant moved for a judgment of acquittal on all counts based upon the sufficiency of the evidence.

### 1.     Sexual Exploitation of a Minor (Counts I, III, IV, V)

With respect to the sexual exploitation of a minor counts, (Counts I, III, IV, and V), Defendant argued that the Government failed to prove beyond a reasonable doubt that he "used, persuaded, induced, or enticed" the victim to engage in sexually explicit conduct.[2] Defendant claimed there was "substantial testimony" from the

---

[2] To convict Defendant of sexual exploitation of a minor, the Government was required to prove: (1) at the time, Arianna S. was under the age of eighteen years; (2) the defendant, for the purpose of producing a visual depiction, employed, used, persuaded, induced, or enticed Arianna S. to engage in sexually explicit conduct; and (3) either: (i) the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate or foreign commerce; (ii) the visual depiction was produced or transmitted using materials that had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer;

minor that she engaged in the sexual conduct "willingly, voluntarily. She liked it. She enjoyed it." [176] at 86:22–87:2. As support, Defendant pointed to evidence that the victim had pictures on her phone of a sexual nature prior to meeting Defendant, and, within a day or 48 hours of her first interaction with Defendant, she shared some of that content with him. *Id.* at 87:2–6.

The Government, however, presented substantial evidence from which a reasonable jury could find that Defendant used, persuaded, induced, or enticed the victim to engage in sexually explicit conduct, and thus was guilty of Counts I, III, IV, and V. Relevant to all counts, the Government offered evidence that the victim was highly susceptible to predation. The victim was insecure, did not have many friends, and had mental health issues. [175] at 82:19–25; 100:2–24 (victim telling Defendant in Snapchat messages with Defendant that she has 7 mental disorders); [174] at 105:17–106:7 (mother's testimony that victim was socially awkward and that she was did not have many close friends). Additional inducement and grooming evidence showed how Defendant acquired the victim's trust in order to manipulate her. Defendant told Arianna S. that he loved her, sent her photos of his kids, and sent photos of his own genitalia. Arianna S. testified Defendant's actions made her feel "excited because I was attention deprived at the time and I needed attention." [175] at 91:24–25.

The Government also presented specific evidence that Defendant employed, used, persuaded, induced, or enticed Arianna S. to send sexually explicit materials. In support of Count I, the Government introduced Snapchat communications from January 12, 2020 (Exhibit 5), in which Defendant repeatedly requested sexually explicit content from the victim, at times directing the actions he wished the victim would take (i.e., "I want a vid." "Actually. Do something special for me will ya?" "Vibrator. In one video." "Just sent it." "Save it then send it in the chat. Hurry."). In reference to this conversation, the victim testified that Defendant was "trying to get a video out of me." [175] at 102:13–104:9. She was "starting to get uncomfortable," but said she "didn't want to disappoint him so I was trying to make compromise." *Id.*

Regarding Count III, the Government offered Snapchat messages from January 15, 2020 (Exhibit 5Q), in which Defendant wrote to Arianna S., "Why insecure? . . . I didn't wanna see all of it baby. Just the top. Like pull your boxers down a little bit and show a little less than half. I wanted to see some pussy if that's ok." [175] at 149:3–6. After Arianna S. told Defendant that she was uncomfortable,

---

or (iii) the visual depiction was actually transported or transmitted using any means or facility of interstate commerce. 18 U.S.C. § 2251(a).

Defendant proposed an alternative: "How about a different teasing pic? Boobies! . . . If you wanted, I'm ok with just a teasing pic, like under boob . . . ." *Id.* at 149:17–21. The victim testified that in these messages, "He was asking for a photo. I'm pretty sure I had just woken up and he was asking for a photo of me at least halfway naked and I didn't want to . . . And I was explaining that I didn't want to do it . . . ." *Id.* at 149:10–14.

With respect to Count IV, the Government also offered a lengthy Snapchat conversation from January 16, 2020 (Exhibit 5Z), in which Defendant made multiple requests for specific explicit images and videos, including: "Put one finger in and show me. Vid of you using one finger, please. Record you fingering yourself." [175] at 152:19–24. Defendant confirmed receipt of this content and gave explicit instructions of what he wanted to see: "Then slip a second in baby" and asked the victim to give him "something to jerk to." *Id.* at 153:19–23; 174:13–14. The victim explained that during this conversation she and Defendant were on video chat, and "I was doing what he was telling me to do in those messages." *Id.* at 153:1–3.

Finally, in support of Count V, the Government offered text messages between the victim and Defendant, in which she told Defendant that she was "wet," and he directed, "show me." [175] at 167:23–168:6. The victim testified that she understood this message to mean that the Defendant "wanted me to show him" her genitals. *Id.* at 168:1–6. In response, the victim sent Defendant a picture of herself in the shower depicting her genitals, to which Defendant responded, "baby I want to stretch you." *Id.* at 168:12–169:11.

The testimony of Detective Thomas Atkins and Investigator Brian LeBeau corroborated the existence of this sexually explicit material above (and the related text messages) on Defendant's cell phone. *See* [174].

In sum, the evidence at trial supporting the second element of Counts I, III, IV, and V was certainly enough to sustain his conviction under 18 U.S.C. § 2251(a).

Regarding the sexual exploitation counts (I, III, IV and V), Defendant also argued that the Government failed to prove the "interstate commerce" element because Special Agent Carrie Landau lacked personal knowledge that the phone recovered from Defendant was manufactured outside of Illinois, and that venue was improper in this district because Special Agent Carrie Landau, did not know that the town of Peru, Illinois, is located in the Northern District of Illinois. This argument likewise remained equally unavailing because the Government proved the interstate commerce element by multiple methods, including: (1) testimony from Arianna S. and

law enforcement that the sexually explicit content was *transmitted by a facility* of interstate commerce, specifically, iPhones, [174] at 17:25–18:5; [175] at 139:10–11; (2) Investigator LeBeau's testimony that iPhones were not manufactured in the State of Illinois, and thus the sexually explicit conduct was *produced* using materials that were transmitted via interstate commerce, *id.* at 174:8–12; (3) testimony from Agent Bauer about the cell site analytics he performed that placed Defendant's phone in Ohio on all days of the charged conduct, *id.*at 205:8–219:3, along with Arianna S.'s testimony about text messages she sent to Defendant about either driving to Ohio to meet him or him coming to Joliet, Illinois, *id.* at 91:20–92:2, indicating that the sexually explicit material was *transmitted across state lines*; and (4) testimony from Katia Price, a law enforcement response specialist for Snapchat that their data is accessed *over the Internet*, [174] at 124:23–125:3, along with testimony from Arianna S. that the sexual content was largely transported via Snapchat.[3] As for venue, the parties stipulated that the victim's address was in Peru, Illinois, LaSalle County, which is located in the Northern District of Illinois. [176] at 110:23–111:6.

Considering the evidence in the light most favorable to the Government, this Court found that the evidence outlined above was sufficient to sustain a conviction on Counts I, III, IV, and V. Therefore, this Court denied Defendant's Rule 29 motion with respect to these counts.

### 2. Receipt of Child Pornography (Count II)

Defendant argued that the Government failed to prove Count II (receipt of child pornography) beyond a reasonable doubt. To convict Defendant of this count, the Government was required to prove that: (1) Defendant knowingly received child pornography, including visual depictions of a minor engaged in sexually explicit conduct; (2) the visual depictions of a minor engaged in sexually explicit conduct are child pornography; (3) that the Defendant knew both that the material depicted one or more minors and that the minor was engaged in sexually explicit conduct; and (4) the visual depictions of a minor engaged in sexually explicit conduct were shipped or transported in or affecting interstate commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(2)(A) and (b)(1).

In support of Count II, the Government offered overwhelming evidence of guilt, including various Snapchat messages between Defendant and Arianna S. from

---

[3] Consistent with well-settled law, the jury was instructed—without objection from Defendant—that "Images transmitted or received over the Internet have moved in interstate or foreign commerce." *See* [170].

January 12, 2020 (Exhibit 5D) that included sexually explicit content of the victim.[4] In those messages, Defendant and the victim engage in a sexually explicit conversation and Defendant asks the victim, "Hey if I asked for a pic, would you send one?" [175] at 92:15–16. In response, the victim testified she sent the Defendant five pictures of "myself naked doing stuff to myself," with a vibrator. *Id.* at 95:11–18, 97:7–8. In these photos, Arianna S. testified she was "15 or 16," which Defendant had previously confirmed in a Snapchat message. Exhibit 5C ("you're only 16 ain't ya?"). As for the interstate commerce element, the parties acknowledged their respective locations in different states during that Snapchat exchange. The victim tells Defendant that she needed her license so she could drive over to Ohio, and proposed maybe they could "grab lunch" the next time Defendant is in Joliet, Illinois. *Id.* at 91:25–92:2. The victim testified that she understood the Defendant's statement, "If you wanna grab something, I can assure you it wont be lunch" to be "sexual in nature." *Id.* at 92:3–8.

Based upon the evidence at trial, this Court found that the evidence was sufficient to sustain a conviction on Count II and thus denied Defendant's Rule 29 motion with respect to that count.

## III.  Rule 33 Findings

Rule 33 authorizes district courts to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a); *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005). Granting a new trial is "reserved for only the most extreme cases," and courts "approach such motions with great caution." *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) (citations omitted); *see also United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) ("A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly."). Rule 33 "requires a new trial 'only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict.'" *United States v. Maclin*, 915 F.3d 440, 444 (7th Cir. 2019) (quoting *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016)). The "ultimate inquiry is whether the defendant was deprived of a fair trial." *United States v. Friedman*, 971 F.3d 700, 713 (7th Cir. 2020) (quoting *United States v. Lawrence*, 788 F.3d 234, 243 (7th Cir. 2015)). Unlike Rule 29, Rule 33 is permissive, and district courts have considerable discretion in deciding motions for a new trial. *Id.* at 716.

---

[4] Defendant does not dispute that the sexually explicit content constituted child pornography under 18 U.S.C. § 2252A(a)(2)(A) and (b)(1).

In Defendant's motion for a new trial, he argues that this Court erred in: (1) barring evidence that Arianna S. previously sent sexually explicit material to other individuals before communicating with Defendant based on Federal Rule of Evidence 412; (2) allowing the admission of other-act evidence under Rule 404(b); (3) denying his motion *in limine* to bar Arianna S.'s mother, Adria S., from testifying; (4) denying his request to examine the venire about the definition of proof beyond a reasonable doubt and his later request to use a chart during argument illustrating Defendant's version of "reasonable doubt"; and (5) denying his request to provide the jury with Seventh Circuit Civil Jury Instruction 1.20. [182]. Defendant further argues that he is entitled to a new trial because the destruction of Arianna S.'s Snapchat messages deprived him of due process, a fair trial, and the ability to conduct a legitimate cross-examination. *Id.* The Court considers Defendant's arguments in turn below.[5]

## A. Rule 412 Evidence

Defendant argues that this Court erred in barring evidence that Arianna S. voluntarily sent sexually explicit content to other individuals prior to communicating with Defendant. This evidence was the subject of the Government's motion *in limine* to exclude evidence of "any sexual conduct of the victim outside the scope of this case, including sexting or sexual relationships with other individuals." [138]. Consistent with Rule 412, the Government intended to prevent Defendant from arguing that "the victim's engagement in 'sexting' with other individuals at other times proves that the victim acted in conformity with these acts on the date of the offense." *Id.* at 7. At the Final Pretrial Conference held on September 28, 2023, the Government represented that Defendant had failed to file the requisite motion to admit any sexual conduct of the victim under a Rule 412 exception, and that Defendant had affirmatively represented to the Government that he did not intend to introduce such evidence. Defendant confirmed this prior representation in court, and this Court granted the Government's motion as agreed. [178] at 49:17–20, 51:25–52:2.

On October 3, 2023, however, during the cross-examination of Investigator LeBeau about the data extraction of Arianna S. phone, defense counsel asked LeBeau, "How many pictures were sent from the phone that you collected to phones that were not possessed by Andrew Boltz?" [174] at 88:16–18. The Government objected and, during sidebar, expressed concern that the question was attempting to improperly elicit Rule 412 evidence regarding the victim's "sexting" with other individuals. [174] at 89:9–15. Defense counsel confirmed it was, in fact, seeking to elicit "a number of messages and pictures sent to other people" "of a sexual nature."

---

[5] In addition, Defendant incorporates by reference the arguments in support of his Rule 29 motion, but those arguments remain unpersuasive; the jury's verdict was supported by ample evidence with respect to all counts.

*Id.* at 89:25–91:10, 92:2. When asked about the probative value of this evidence, defense counsel proffered: "If the individual at issue, the alleged victim, sent pictures of a sexual nature without encouragement, enticement, or inducement to others, it makes it more probative that she would do the same thing with respect to Mr. Boltz." *Id.* at 91:7–15. Defendant conceded this constituted evidence of "sexual behavior with other individuals," but indicated it would be introduced "for the purpose of showing [the victim] did it without inducement to make it more probative that she would do it in this case." [175] at 91:20–24. Defendant did not claim the applicability of any Rule 412 exceptions at that time or otherwise justify the admission of this character evidence. Instead, Defendant stated that he did not comply with Rule 412's notice requirements because he was only trying to introduce what "conceivably could be covered by Rule 412" but only in a "generalized way." *Id.* at 94:22–3. Based upon this proffer, and the Court's conclusion that Rule 412 makes no distinction between "general" or "specific" evidence of sexual conduct, this Court reviewed the record (including 403 concerns) and determined that the evidence fell squarely within the bounds of Rule 412 (as well as the Government's previously granted agreed motion *in limine*) and thus granted the Government's objection to this line of inquiry. [174] at 100:2–3.

On October 4, 2023, Defendant filed a motion to reconsider, this time arguing that Rule 412 did not apply at all because "sexual behavior" under the rule is limited to actual physical conduct, and "sexual predisposition" is limited to evidence of a victim's "mode, speech or lifestyle." [161]. The Court rejected that contorted reading of the rule because it remained both inconsistent with the plain language of Rule 412 and would otherwise lead to absurd results. Additionally, this Court also considered the Rule's text and purpose, the Defendant's failure to comply with the Rule's procedural requirements, the inapplicability of any exceptions to Rule 412, and persuasive precedent.[6] These considerations, as well as 403 and the absence of a Sixth Amendment or other constitutional issue, contributed to the Court's decision to deny Defendant's motion to reconsider.

In support of his Rule 33 motion, Defendant argues that the Court erred in excluding this evidence because it was offered to prove the victim's "state of mind" and whether she sent the sexually explicit material "voluntarily" or because she was "employed, used, persuaded, induced, or enticed" to do so by Defendant. [182] at 3.

---

[6] *See United States v. Walker*, 917 F.3d 1004, 1009 (8th Cir. 2019) (affirming district court's decision in sexual exploitation of a minor trial to exclude minor victim's sexual communications with other men under Rule 412 over defendant's argument that such communications undermined the fact that defendant "used, persuaded, induced, or enticed" the minor to do so); *United States v. Ogden,* 685 F.3d 600, 605 (6th Cir. 2012) (affirming exclusion of victim's chat logs with other men as barred by Rule 412).

When asked at oral argument on April 10, 2024, about the probative value of the evidence and whether it involved "propensity" reasoning, defense counsel described the defense theory as a "nuanced version" of propensity. Mtn. Hr'g. Transcr. at 4; [188]. Yet, the explanation Defendant provided was no more nuanced than at trial; since the victim sent sexually explicit photos voluntarily or without inducement and enticement to other individuals, "there is at least a likelihood that she did so in this case." *Id.* For the first time, Defendant also argued that the evidence would fall under Rule 412(b)(1)(C), since its exclusion would violate Defendant's rights to due process and a fair trial.[7]

Based upon the record, the Court remains unpersuaded and finds that the exclusion of this evidence did not deprive the Defendant of due process or a fair trial, for the reasons outlined below. First, this evidence was squarely barred by Federal Rule of Evidence 412. In a criminal proceeding involving alleged sexual misconduct, that Rule prohibits introduction of: (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition. Fed. R. Evid. 412(a).

A victim's "past sexual behavior" under subsection (1) has been interpreted broadly, encompassing all activities that involve or simply allude to actual physical conduct, *i.e.* sexual intercourse and physical contact, as well as "activities of the mind, such as fantasies or dreams." *Id.* (citing *United States v. Galloway*, 937 F.2d 542 (10th Cir. 1991), *cert. denied*, 113 S.Ct. 418 (1992) (use of contraceptives inadmissible since use implies sexual activity) (collecting other cases)). "Past sexual behavior" also includes "verbal conduct." *United States v. Ogden*, 685 F.3d 600, 605 (6th Cir. 2012) (citing 23 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 5384 (1st ed. 1969), and *United States v. Papakee*, 573 F.3d 569, 572–73 (8th Cir. 2009)).

Since its adoption, Rule 412 has been amended to expand the types of conduct that are covered to promote the "strong social policy" of protecting "victims' privacy and encouraging victims to come forward to report criminal acts." *See* Fed. R. Evid. 412 Advisory Committee's Note. Indeed, subsection (2) was added by amendment to exclude "all other evidence relating to an alleged victim of sexual misconduct that is

---

[7] Given that this argument was not timely raised at trial, it is waived. In considering whether to admit this evidence at trial, this Court specifically considered, among other things, the fact that no exceptions to Rule 412 were proffered by the Defendant. *See* [174] at 96:9-22 (telling defense, "there's exception" to Rule 412, "if you've got a theory"). Defendant consistently maintained the position that Rule 412 did not apply to this evidence at all, either because Defendant did not plan to get into "content" or "specifics," or because of the narrow scope of "sexual behavior" or "sexual behavior" he contended were barred by the rule.

offered to prove a sexual predisposition." *Id.* The Advisory Committee Notes explain that subsection (2) was "designed to exclude evidence that does not directly refer to sexual activities or thoughts but that the proponent believes may have a sexual connotation for the factfinder." *Id.* As *non-exhaustive* examples, the Notes point to evidence such as the victim's "mode of dress, speech, or lifestyle." *See id.*

Applying the plain language of the Rule, testimony that Arianna S. sent sexually explicit photos or videos to other individuals falls squarely within the scope of Rule 412, either under the broad definition of "sexual behavior" or as "evidence of the victim's 'sexual predisposition.'" *See, e.g., Ogden*, 685 F.3d at 605 (finding minor victim's chat logs of victim's messages sending explicit images of herself to other men inadmissible under Rule 412); *Walker*, 917 F.3d at 1008 (same with respect to communications on age-restricted websites). Defense counsel conceded during and after trial that the content was "sexual in nature," and that its only relevance was to allow the factfinder to infer that since the victim has previously sent sexually explicit photos to others on unrelated occasions without inducement or enticement in the past, then it is more likely that she did so in this case. Admitting this evidence would have also undermined the express purposes of Rule 412's objectives, including "shielding the alleged victim from potential embarrassment" and "stereotypical thinking." *See* Fed. R. Evid. 412 Advisory Committee's Note.

Second, Defendant failed to comply with Rule 412's procedural requirements nor did he present a theory of admissibility based upon any of the Rule's exceptions. For example, the parties do not dispute that Defendant failed to file and serve a motion seeking admission of this evidence at least 14 days before trial and did not notify the victim, as required by the Rule. Fed. R. Evid. 412(c). This omission alone justified exclusion of this evidence as a matter of procedural fairness. The introduction of such evidence would have caused unfair prejudice to the Government impacting its case-in-chief since the Government reasonably relied upon the Defendant's representation before trial that it would not introduce such evidence. *See* [175] at 11:7–16. The Court considered these factors as well when it granted the Government's motion *in limine* to bar this evidence. *See id.*

For the first time at oral argument on his motion for a new trial, Defendant offered a new theory of admissibility. Although clearly waived, this Court will address it here, in the alternative, for the sake of completeness. Defendant claims the excluded evidence falls within Rule 412's exception for "evidence whose exclusion would violate the defendant's constitutional rights," specifically due process, a fair

trial, and the opportunity to fully cross-examine the witnesses at trial. Fed. R. Evid. 412(b)(1)(C).[8]

The record undermines Defendant's assertion. As noted above, when the Court excluded this evidence, the applicability of the Rule 412 exceptions was part of its analysis, including the impact of excluding this evidence on Defendant's constitutional rights. [175] at 15:18–16:4. This Court also considered the proffered probative value of this evidence in light of the entire trial record, which it determined to be minimal. Accordingly, the Court found that even if not barred by Rule 412, the evidence would nonetheless be barred by Rule 403, since the dangers of unfair prejudice and likelihood of jury confusion presented by this evidence substantially outweighed its probative value. [175] at 16:1–5.

Significantly, to ensure that Defendant would have a meaningful opportunity to present a complete defense, *see Crane v. Kentucky*, 476 U.S. 683, 690 (1986), this Court's ruling was also tailored to exclude only the testimony that ran afoul of Rule 412 and 403. After excluding the evidence, the Court discussed on the record with defense counsel exactly which questions and answers would be permitted regarding the victim's activities and the other content on her cell phone. [175] at 18:8–2:6. Defense counsel stated that his questions would follow the "edge" of the ruling, so this Court clarified the contours of its ruling and allowed Defendant to elicit: (1) testimony from the victim that she had other "boyfriends" online prior to Defendant, to rebut the victim's mother's testimony that Arianna S. was fragile and particularly susceptible to Defendant's grooming and predation; and (2) testimony from the victim herself that she already possessed on her phone, prior to meeting Defendant, sexual pictures she had of her own body (*not* engaged in sexual conduct), and that she sent some of that previously-stored content to Defendant within 48 hours of meeting him. As the Defendant himself acknowledged during oral argument on his Rule 29 motion, this Court allowed the admission of substantial evidence that, if believed by the jury, could have undermined the Government's showing on the element of inducement, enticement, etc. Although Defendant was barred from admitting the victim's sexual activity with other people, that exclusion did not ultimately prevent Defendant from offering evidence and arguing to the jury that the victim was not as susceptible to manipulation as the Government had presented her to be. [177] at 34:17–5 ("Before she met Andrew Boltz, she told us that had had numerous sexually explicit pictures and videos of herself . . . . She was able to send them to Andrew within 24 to 48 hours of meeting him online. She was not enticed."). Thus, the excluded evidence was not

---

[8] Defendant does not contend, nor could he, that any other exceptions to Rule 412 apply.

critical to his defense,[9] and its exclusion did not deprive the Defendant of due process or a fair trial.

Finally, in considering the proffered value of the excluded evidence, there is no "reasonable possibility" that exclusion had an impact upon the jury's verdict. *Maclin*, 915 F.3d at 444. To convict Defendant on the sexual exploitation of a minor charges, the Government was required to prove that he used, persuaded, induced, or enticed Arianna S. to send sexually explicit content; however, the consent of the minor victim was not a defense to the charges in this case, and the Court instructed the jury accordingly, without objection. 8 U.S.C. § 2251(a); [170]. At trial, the Government introduced overwhelming evidence of persuasion, inducement, and enticement, and the fact that Arianna S. may have "voluntarily" sent sexually explicit content to Defendant was not relevant.[10] The Court denied Defendant's Rule 33 motion for all these reasons.

## B.  Exclusion of Other-Act Evidence Regarding "Minor C"

Defendant argues this Court erred in admitting evidence of his conduct with a 14-year-old minor in Ohio (referred throughout these proceedings as "Minor C"), specifically a short set of video clips (Exhibits 17B, 17E, 17C, and 17G) of an 11-minute interview of the Defendant by the Norfolk (Ohio) Police Department. [182] at 14. In those clips, Defendant admitted to engaging in a strikingly similar course of grooming conduct with Minor C as charged in this case, including: chatting with

---

[9] *See Ogden*, 685 F.3d at 605 (affirming district court's conclusion that defendant's due process rights were not violated where "[o]n this record, the chat logs were not critical to Ogden's defense. All the government needed to prove for the enticement charge was that Ogden induced the victim to engage in conduct to produce at least one explicit image. And the record includes the victim's testimony that she masturbated on webcam, at Ogden's request, while he watched. Chat-log evidence that the victim sent images to other men would not impeach the victim's testimony as to this specific incident—and indeed it might have bolstered the testimony. The victim also testified that Ogden made videos of her without her knowledge and that she recognized "videos that he recorded of [her]" among the videos found on Ogden's hard drive. Some of the videos on Ogden's hard drive depicted the victim nude. The chat-log evidence would not have impeached this testimony to the point where the Constitution required its admission.").

[10] Throughout these proceedings, defense counsel has used the terms "voluntariness" and the absence of "inducement, enticement, or persuasion" interchangeably. They are not the same. That the minor victim in this case may have consented or "voluntarily" sent sexually explicit material to the Defendant is not a defense in this case. *See, e.g., United States v. Street,* 531 F.3d 703, 708 (8th Cir. 2008) (noting that a minor's consent is not a defense to sexual exploitation of a minor, and thus a minor's willingness to engage in the acts is irrelevant). By contrast, to convict Defendant of sexual exploitation of a minor, the Government was required to prove, beyond a reasonable doubt, that Defendant, "for the purpose of producing a visual depiction" employed, used, persuaded, induced, or enticed Arianna S. to engage in sexually explicit conduct." 18 U.S.C. § 2251(a). Accordingly, evidence suggesting the *absence* of this element would be a defense, but evidence that the victim "liked it," as defense counsel suggested during oral argument on his Rule 29 motion, or was a willing participant to the conduct, is not.

Minor C via Omegle, and moving their conversations to the more secure Snapchat platform where Defendant exchanged sexually explicit messages and pictures with the minor, even using similar manipulations and catch phrases (such as having Minor C call him "daddy" and saying he wants to "stretch" her). These videos were introduced through the testimony of Special Agent Carrie Landau who participated in the prior interview. Defendant claims the admission of the short interview clips, along with Special Agent Landau's testimony, violated Defendant's rights to due process and a fair trial because this evidence was: (1) irrelevant; and (2) allowed the jury "to decide the case on emotion rather than evidence." *Id.* at 18. Not so.

As a threshold matter, in terms of procedural fairness, the Government complied with Rule 404(b)'s notice requirements before trial and filed a motion *in limine* to admit this evidence to prove Defendant's identity, knowledge, and/or his intent, if any of those issues triggered a need for the 404(b) evidence. *See* [141] at 12. The Government stated that the admission of this evidence would be conditional, depending upon how and whether Defendant placed identity, knowledge, or intent at issue. *Id.* Recognizing that details matter when analyzing Rule 404(b) evidence, and that its admissibility can be a "moving target," this Court took the Government's motion under advisement, pending its *in camera* review of the redacted interview clips and the unfolding of events at trial. [178] at 65:1–6.[11]

At trial, the probative value of this evidence increased significantly when Defendant raised an identity defense. For instance, Defendant raised the issue through Stephine Payne, who identified the genitals in the photo sent to Arianna S. to be those of the Defendant, but who also admitted the possibility, via cross-examination, that the photo might be his brother or father. [174] at 57:14–58:1. Likewise, Defendant raised the identity defense again through the cross-examination of Ryan Gillmor, who testified that the calls made, or messages sent, from Defendant's phone could have been initiated or received by someone other than the Defendant. *Id.* at 26:23–27:15. The Government consequently renewed its request to admit this evidence. *Id.* at 65:6–10.

Since the admissibility of other-act evidence under Rule "404(b) is all about the details," [175] at 31:9–13,[12] this Court required the Government to make a detailed

---

[11] Defendant also claims that this Court erred in granting the Government's motion *in limine*, [141] at 2–3. This Court did not admit the evidence pretrial, however, and only allowed the evidence after Defendant challenged his state of mind and specifically placed his identity at issue.

[12] *See United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (noting that district courts should not just ask *whether* the proposed other-act evidence is relevant to a non-propensity purpose but *how* exactly the evidence is relevance is relevant to that purpose—or more specifically, how the evidence is relevant without relying on a propensity inference).

proffer at trial as to the form the evidence would take, the specific questions and answers the Government intended to pose, and the non-propensity purpose(s) for which it was being offered. [175] at 27:7–35:8. Based upon that proffer, and the evidence presented at trial, this Court applied the requisite four-part test, considering whether: "(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *United States v. Sebolt*, 460 F.3d 910, 916 (7th Cir. 2006).

Here, the Defendant challenges only this Court's assessment of prong four.[13] In its analysis, this Court specifically considered whether admitting this evidence would "induce the jury to decide the case on an improper basis," an "emotional one rather than the evidence presented." [175] at 38:24–39:7. On that point, *United States v. Chambers*, 642 F.3d 588, 592–595 (7th Cir. 2011) remains instructive.

In *Chambers*, the district court admitted the defendant's prior chats with a law enforcement officer (who posed as a minor) in which the defendant boasted about his prior sexual acts with a minor for the purpose of establishing motive and intent in a sexual exploitation of a minor case. *Id.* As here, the defendant claimed that any probative value of the evidence was substantially outweighed by the danger of unfair

---

[13] With respect to prong one, this Court identified several non-propensity purposes for this evidence, including to prove identity (which was "certainly" challenged and at issue), modus operandi, motive and intent. As support, this Court relied upon Seventh Circuit cases including, but not limited to, *Sebolt* and *Roux*, which confirmed that the other-act evidence concerning Minor C could be offered to prove identity and motive. *See Sebolt*, 460 F.3d 910 (holding "prior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children"), and *United States v. Roux*, 715 F.3d 1019, 1023 (7th Cir. 2013) (affirming admission of testimony about sexual abuse of victim's sisters by Defendant and to establish defendant's identity and motive). Relatedly, with respect to the second prong, this Court considered the similarity and proximity of the conduct with Minor C to the conduct vis-à-vis the victim in this case, a mere six months, and Defendant's very similar modus operandi with respect to the grooming, enticing, encouraging, and persuading these minors to send him sexually explicit photos and videos. For example, the Court reasoned that Defendant's use of the applications Omegle and then Snapchat, demonstrates motive, intent, and identity through not only activity, but also through the *practice* of using one method (Omegle) to draw in victims, and another method (Snapchat) possessing different capabilities (Snapchat) to elicit photos; in Snapchat, photos are not preserved, which is a significant feature if one wants to engage in sexually explicit conversations as alleged in the Indictment. The parties agreed that there was sufficient evidence in the trial record to support a jury finding that the Defendant committed these acts, so the third prong was also satisfied. [175] at 34:22–35:8.

prejudice. *Id.* at 594. Although recognizing this evidence was "highly prejudicial," the Seventh Circuit affirmed its admission, reiterating that to be excluded, "the evidence must be *unfairly* prejudicial." *Id.* (emphasis in original). The court further noted that the limiting instruction provided removed any potential unfair prejudice. *Id.* at 596.

This Court reached the same conclusion. Having reviewed the redacted video clips, this Court found that the Government did not seek to elicit "evidentiary detail" of the Defendant's activities with Minor C, and "sanitized down" the evidence into a series of redacted, "very short clips." [175] at 39:8–23. The clips were less than one minute each, did not contain any inflammatory remarks, did not show photographs with Minor C, and did not detail any other activity, sexual or otherwise. *Id.* The Government also removed from the videos any admissions by Defendant that he sexually assaulted Minor C. *Id.* Given these safeguards, this Court determined that this evidence would not induce the jury to decide the case on an emotional basis. Instead, the clips reflected only "discrete facts" that were highly probative of "non-propensity" purposes, including showing that Defendant chatted with another minor on one site, Omegle, and then switched to another, Snapchat; that the target was an underage person; and that Defendant knew the target was underage, all using the same phone and number as in this case. *Id.*

Furthermore, this Court ordered the parties to meet and confer to devise an agreed-upon limiting instruction, which specified the limited purposes for which this evidence could be considered. [175] at 40:24–13. The agreed limiting instruction was read before the evidence was introduced, *id.* at 44:24–46:13, and it was included among the Final Instructions read and provided to the jury during their final deliberations, [170] (Court's Instruction 12). *See also United States v. Zahursky,* 580 F.3d 580, 525–26 (7th Cir. 2009) (quoting *United States v. Lee,* 558 F.3d 638, 649 (7th Cir. 2009) ("Absent any showing that the jury could not follow the court's limiting instruction, we presume that the jury limited its consideration of the testimony in accordance with the court's instruction.")). Thus, even though Defendant was not unfairly prejudiced by the admission of the redacted clips, any potential unfair prejudice was also removed by the Court's instructions to the jury. *Chambers*, 642 F.3d at 596.

Given the highly probative nature of this evidence for non-propensity purposes relevant to issues at trial, and the safeguards provided in terms of redactions to the review and this Court's limiting instructions, Defendant was not deprived of due process or a fair trial by its admission. This Court denied Defendant's Rule 33 motion on this basis.

### C. Admissibility of Testimony of Victim's Mother, Adria S.

Defendant next argues that this Court erred in denying his motion *in limine* to bar the testimony of Adria S. [182] at 19. In this motion, Defendant argued that this testimony was either irrelevant under Rule 401 or unduly prejudicial under Rule 403, asserting the witness would only garner "sympathy" for the victim and could offer no other relevant testimony. *Id.* At the Final Pretrial Conference, the Government proffered that the victim's mother would testify to several relevant areas: (1) the victim's age; (2) how the mother learned of the victim's relationship with Defendant; (3) her phone conversation with the Defendant about his relationship with the victim and his response; and (4) the victim's demeanor when her mother told her she needed to end the relationship with the Defendant and during the phone call with Defendant. The Government explained that Arianna S.'s demeanor would help establish and corroborate the intensity of their two-week relationship, and that this would help the jury to determine the nature of the enticement, inducement, and/or persuasion. Accordingly, the Court found no basis to categorically bar the testimony of the Adria S. on a pretrial basis, but reminded Defendant that he should raise timely objections during trial as to the admissibility of particular questions and answers. [178] at 35:2–36:13. This Court also noted for defense counsel that the details of Adria S.'s testimony, and any stipulations entered, might change the Rule 403 calculus, so Court would address each timely trial objection. *Id.*

At trial, the victim's mother offered highly probative testimony and Defendant failed to object to any questions or answers.[14] Adria S. testified that her daughter was a "socially awkward" 16-year-old that had few friends. [174] at 105:17–106:7. Although such testimony might "garner" sympathy, this testimony was highly relevant to the jury's consideration of the victim's susceptibility to inducement, enticement, and persuasion by the Defendant. Adria S. also explained the origin of the investigation and how key pieces of evidence came into the possession of the authorities. For example, she explained that she learned of Arianna S.'s relationship with Defendant through a school guidance counselor, and that shortly thereafter she picked up her daughter from school and went through her phone. *Id.* at 106:16–108:6. Adria S. described what she observed on her daughter's phone, including saved contact information for the Defendant, his contact name "Mr. Andrew," his phone number, and his birthday. *Id.* at 108:20–112:4. Additionally, Adria S. testified about other key facts including that when she demanded that Arianna S. end her relationship with Defendant, her daughter "broke down," "manic screaming and crying." *Id.* at 112:5–17. She also confirmed Defendant's phone number by her

---

[14] Of course, Defendant's failure to make timely objections at trial results in waiver.

testimony that when she called the number associated with Defendant to admonish him never to contact her daughter again, Defendant answer himself and responded that he "understood."  *Id.* at 112:22–114:8.

Quite simply, the testimony of Adria S. was highly probative under Rules 401 and 403, and it was not unduly prejudicial to the Defendant.  This Court properly denied Defendant's Rule 33 motion.

### D.  Defendant's Request to Question the Venire About the Meaning of "Reasonable Doubt" & to Use "Reasonable Doubt" Charts During Argument

Defendant next argues that the Court erred in denying his requests to: (1) query the venire about the meaning of "reasonable doubt" and have them explain their own definitions; and (2) use, during closing argument, two charts to "illustrate" the definition of "reasonable doubt."  [182] at 20.

This argument has no merit.  This Court has broad discretion over the voir dire process, and, as a general matter, litigants do not enjoy a right to have a particular question asked.  *Gardner v. Barnett*, 199 F.3d 915, 920–21 (7th Cir. 1999) (citing *Morgan v. Illinois*, 504 U.S. 719, 729 (1992); *Ham v. South Carolina*, 409 U.S. 524, 527 (1973).  In this case, over the course of three days of jury selection, the Court afforded counsel wide latitude to query the venire.  Consistent with this Court's ruling at the Final Pretrial Conference, defense counsel took full advantage of this opportunity.  During voir dire, defense counsel explained to jurors that this is a criminal case, not a civil case, and thus the burden of proof is higher, beyond a reasonable doubt, and asked prospective jurors if they understood and could follow that principle and this Court's instructions on the law.[15]  The Court also independently questioned jurors on their understanding of the Government's burden and the presumption of innocence, and excused all jurors who indicated they might struggle to follow these principles.

This Court denied Defendant's requests to define or explain "beyond a reasonable doubt" due to longstanding precedent in this circuit that it is

---

[15] This Court asked each prospective juror whether they would have "any problem whatsoever accepting and following" the principles that: "the government has the burden of proving . . . the charges beyond a reasonable doubt before the defendant could be convicted," and also that "the defendant is presumed to be innocent of the charges against him," and "must be found not guilty unless his guilt is proven beyond a reasonable doubt."  The Court's Questionnaire for Prospective Jurors posed these questions to jurors, and they were also read out loud, and confirmed in open court.  Any jurors that indicated they could not follow these principles were excused.

inappropriate and unhelpful for counsel or the Court to attempt to define reasonable doubt. *See* Seventh Circuit Pattern Criminal Jury Instruction 1.04 (2022) (collecting cases); *United States v. Alt*, 58 F.4th 910, 919 (7th Cir. 2023) (citing *United States v. Alex Janows & Co.*, 2 F.3d 716, 723 (7th Cir. 1993) ("[W]e [again] admonish counsel, do not define 'reasonable doubt' to a jury."); *United States v. Glass,* 846 F.2d 386, 387 (7th Cir. 1988) (explaining that "judges' and lawyers' attempts to inject other amorphous catch-phrases into the 'reasonable doubt' standard, such as 'matter of the highest importance,' only muddy the water" and therefore, it is "inappropriate for judges to give an instruction defining 'reasonable doubt,' and it is equally inappropriate for trial counsel to provide their own definition"). Defendant offered no persuasive, let alone controlling authority, to support his proposed questions or charts.[16] As such, the record did not justify allowing defense counsel to question jurors about the meaning of "beyond a reasonable doubt" or to use charts to define it.

This Court's denial of Defendant's request was therefore proper, and in no way deprived Defendant of a fair trial.

### E. Destruction of Evidence

Defendant moves to dismiss the indictment,[17] [176] at 90:1–91:6, and for a new trial under Rule 33, based upon the deletion of certain Snapchat messages between Arianna S. and Defendant, [182] at 13. Defendant claims that the Government's "insufficient efforts" to preserve these messages denied him due process, a fair trial, and the right to "legitimately and fairly" confront and cross-examine Arianna S.[18] *Id.* at 9.

---

[16] The only authority cited by Defendant in support of his motion *in limine* [155] was a Sixth Circuit case, *United States v. Hill,* 738 F.2d 152 (6th Cir. 1984). In *Hill*, a divided Sixth Circuit panel determined that a district court's refusal to question prospective jurors about the presumption of innocence and burden of proof constituted abuse of discretion. That case is unavailing for several reasons. First, the case does not require this Court to allow Defendant to question jurors about their understanding of what "reasonable doubt" means or to use a "reasonable doubt" chart. Second, even if it did, such a proposition has been squarely rejected by this Circuit. *United States v. Sababu*, 891 F.2d 1308, 1325 (7th Cir. 1989) (collecting other federal court of appeal cases rejecting *Hill*). Indeed, this Court actually complied with *Hill*'s actual requirements (confirming a juror's understanding that the defendant is presumed innocent, and the government bears the burden of proof) through its own questions during *voir dire*.

[17] Defendant did not move to dismiss the indictment before trial because Arianna S.'s trial testimony regarding the timing of her deletion of Snapchat was not yet known and thus not included in the Federal Rule of Criminal Procedure 302 disclosures provided to Defendant. [176] at 90:1–91:6. Given the late disclosure, this Court granted the Defendant's request for leave to file the untimely motion to dismiss, even no allegations of bad faith by the Government were advanced. *Id.* at 113:18−21.

[18] Defendant's rights under the Confrontation Clause were not violated. First, this Court imposed no limits on defense counsel's cross-examination of Arianna S. regarding her messages with Defendant

At trial, the Government introduced conversations between Arianna S. and Defendant over Snapchat, a few of which were "one-sided" in that they included only messages from Defendant. When the Government asked Arianna S. why only Defendant's messages were present at times, she explained that there were conversations when Defendant sent her messages directing her actions while she responded by video. [175] at 153:1–3. But Arianna S. also testified that her mother had her delete her Snapchat account, and she believed deleting the account "deleted some of the messages." *Id.* at 134:23–135:3. Relevant here, Arianna S. approximated that she deleted her Snapchat account at her mother's direction "anywhere from six months to a year after it was reported to the FBI." *Id.* Agent Carrie Landau, a co-case agent on the investigation, provided a more specific and accurate timeline. She testified "before law enforcement was involved," on or about January 29, 2020, Arianna S. deleted her Snapchat account at the direction of her mother. [176] at 67:11–16; 72:1–15.

For this challenge, *Youngblood* sets forth the governing standard. To establish a due process violation based upon a failure to preserve potentially useful evidence alleged, Defendant must show that "the government acted in bad faith, that the exculpatory nature of the evidence was apparent, and that the evidence could not be obtained elsewhere." *Tabb v. Christianson,* 855 F.3d 757, 768 (7th Cir. 2017) (citing *Arizona v. Youngblood,* 488 U.S. 51, 58 (1988)).

Defendant cannot make this showing. First, bad faith "requires proof of animus or a conscious effort to suppress exculpatory evidence" and "turns on an official's subjective knowledge that the evidence has exculpatory value." *United States v. Bender,* 95 F.4th 507, 511 (7th Cir. 2024) (quoting *United Stats v. United States v. Fletcher,* 634 F.3d 395, 408 (7th Cir. 2011)). Negligence in an investigation is not enough to establish a constitutional violation for the failure to preserve evidence. *Bender,* 95 F.4th at 511; *Holly,* 940 F.3d at 1002.

---

to implicate the Confrontation Clause. *See United States v. Khan,* 608 F.3d 412, 415 (7th Cir. 2007) (considering whether trial court's limitation on defendant's ability to cross-examine witnesses violated Confrontation Clause). Second, Defendant was not deprived of the opportunity to expose Arianna S.'s potential bias or motive to lie. *United States v. Williams,* 892 F.3d 242, 248 (7th Cir. 2018) (considering whether *trial court's* limits on cross-examination impacted "core values of the Confrontation Clause" of exposing witness's bias or motive to lie during testimony) (emphasis added)). Indeed, defense counsel was permitted to explore during the cross-examinations of Arianna S. and Special Agent Landau the very fact that there were messages missing from certain Snapchat conversations and why that was the case. [175] at 20:23–21:4; [176] at 62:15–73:3. Finally, Defendant had the opportunity to cross-examine Arianna S. on *all* out-of-court statements Arianna S. made that were admitted into evidence; no out-of-court testimonial statements were admitted against Defendant to which he did not have the opportunity to cross-examine. *See Crawford v. Washington,* 541 U.S. 36, 68–69 (2004). Defendant's rights under the Sixth Amendment's Confrontation Clause were not violated. *See U.S. Const. amend. 6.*

Here, Defendant has not even alleged, let alone presented evidence of bad faith. At oral argument on April 10, 2024, Defendant conceded as much. Mtn. Hr'g. Transcr. at 6; [188] ("[W]e're aware one of [*Youngblood*'s] requirements is the showing of bad faith on the government. We didn't at the time, nor do we make now, any argument that there's any showing of bad faith on the government.").

Far from showing bad faith, the trial record reveals that as soon as law enforcement became involved at the end of January 2020, it initiated actions to preserve the content on Arianna S.'s cell phone, including Snapchat messages. Detective Thomas Atkins of the Peru Police Department testified that the same day Arianna S.'s mother brought Arianna S.'s phone to him on January 28, 2020, he examined messages and photos on the phone, and took photographs of the cell phone screen. [174] at 148:4–149:23. Furthermore, to obtain the remainder of the data, Detective Atkins also collected the phone and provided it to LaSalle County's State Attorney's Investigator, Brian LeBeau, for forensic examination. *See id.* at 162:18–163:12. Investigator LeBeau then performed a "phone dump" of the phone, and on February 5, 2020, returned the phone to Atkins, along with a report on a USB drive, consisting of SMS and MMS messages, web history, call logs, contacts, and data from applications. *Id.* at 74:18–23, 74:24–3. Special Agent Landau corroborated this testimony, explaining that the Peru Police Department and the LaSalle County State's Attorney's Office preserved the victim's Snapchat and Verizon accounts in February 2020, and further stated that the agencies later contacted the FBI to join the investigation in April 2020. [176] at 67:20–23. These agencies also drafted a search warrant for Snapchat and Verizon records associated with Defendant in May 2020, and followed up in July 2020, when those records were not yet received. *Id.* At 67:24–68:10. In response, Snapchat provided law enforcement with the messages that could be recovered and, when law enforcement identified certain messages were missing, law enforcement followed up again with Snapchat to obtain an explanation. *Id.* at 70:1–6. All of this information was later tendered in discovery to the defense.

Given law enforcement's extensive efforts to preserve this information, and Arianna S.'s contradicted testimony as to when she actually deleted her Snapchat account, the record shows no bad faith and, at very worst, indicates negligence on the part of law enforcement to preserve a few missing Snapchat messages. This is not enough. *Bender*, 95 F.4th at 511. Defendant's inability to establish bad faith alone is fatal to his due process claim. *See, e.g., Fletcher*, 634 F.3d at 408 (7th Cir. 2011) (*Youngblood* challenge failed where defendant presented no evidence of bad faith).

Defendant cannot show the second *Youngblood* element either; he has offered nothing to suggest that the deleted messages were "potentially exculpatory," let alone that the "exculpatory nature" of the messages were "apparent before [their] destruction." *Fletcher*, 634 F.3d at 408. When asked the basis for inferring the deleted messages could have been exculpatory, Defendant responded, "we simply

don't know." Mtn. Hr'g. Transcr. at 17; [188].[19] But, as the Government has acknowledged in its response [185], the many messages Arianna S. sent to Defendant that were preserved were all inculpatory and demonstrated Arianna S.'s receptiveness to Defendant's grooming techniques, such as her compliance with Defendant's requests for sexually explicit material even when she felt uncomfortable. And the fact that Defendant himself directed Arianna S. to delete their messages further suggests that any additional messages between them were inculpatory, rather than exculpatory. Thus, the Defendant's theory finds no support in the record.

Having failed to show bad faith or the apparent exculpatory nature of the deleted evidence, Defendant has failed to establish a due process violation under *Youngblood* warranting dismissal of the indictment or a new trial. *See Holly*, 940 F.3d at 999 (rejecting due process claim where defendant failed to establish that destroyed video was potentially exculpatory or that police acted in bad faith in failing to preserve it). Therefore, the Court denies Defendant's motion to dismiss the indictment.

As for Defendant's Rule 33 motion, Defendant conceded his inability to show a due process violation during oral argument and repackaged his destructive of evidence theory as one of "fundamental fairness" requiring a new trial. Mtn. Hr'g. Transcr. at 6; [188]. This theory fails too.

In his written motion, Defendant again speculated that the missing messages could have contained instances in which Arianna S. sent sexually explicit content to Defendant without being "employed, used, persuaded, induced, or enticed" to do so. [182] at 8. But as noted above, the record already contained evidence on this issue, and Defendant argued that evidence to the jury. For example, the record *did* include messages in which victim appeared to initiate the sexual conversations with Defendant.[20] Despite this evidence, the jury still found that Defendant's actions nonetheless persuaded, induced, or enticed Arianna S. to send the sexually explicit content that she did.

---

[19] At oral argument, defense counsel engaged in pure speculation, claiming that among the deleted Snapchat messages could have been "Snapchat messages with any of the other users she testified she engaged in conversations with." Mtn. Hr'g. Transcr. at 17; [188]. Defendant claimed that Arianna S.'s "voluntary exchange" of sexually explicit materials with others "prior to her contact with" Defendant could have been "relevant to whether she did so voluntarily in this case" with Defendant. *Id.* at 2. Such claims do not help his cause, however, because even if Defendant's speculation were true and the deleted Snapchat messages contained Arianna S.'s communications with other individuals, such messages would not have been ostensibly admissible under Rule 412.

[20] For example, in the messages between Defendant and the victim that formed the basis for Count V, it was the victim that first told Defendant that she was "so . . . wet" and Defendant who responded, "show me." [175] at 152:19–24. Arianna S. testified that she knew Defendant's text meant that he "wanted [her] to show him how wet [she] was," and she complied.

Moreover, the preserved evidence that formed the basis of Counts I, III, IV, and V included specific messages where Defendant asked for certain sexual actions, and the victim delivered. *See Ogden*, 685 F.3d at 605 (noting in a sexual exploitation of a minor case that all the government needed to prove was that defendant induced the victim to engage in conduct to produce at least one explicit image). In other words, even if within *other* Snapchat conversations between Defendant and Arianna S. she sent sexually explicit material to Defendant without prompting, Defendant would remain guilty of the charges in Counts I, III, IV, and V.

Because Defendant failed to show that he was denied due process or a fair trial, this Court denied his Rule 33 motion.

### F.  Civil Pattern Jury Instruction 1.20

Defendant claims that this Court erred in denying his request to include among the Final Jury Instructions a "spoliation/destruction of evidence" instruction, which read:

> Defendant contends that the Government at one time possessed the alleged victim's Snapchat account, including her Snapchat communications, or had the ability to preserve it. You may assume that such evidence would have been unfavorable to the Government only if you find by a preponderance of the evidence that: (1) the Government's actions caused the evidence to be destroyed; and (2) the Government caused the caused the evidence to be destroyed in bad faith.

[165].[21]  The proposed instruction is a modified version of Seventh Circuit Pattern Civil Instruction 1.20.

This Court correctly rejected this instruction, both because it was not triggered by the evidence and because it was not a correct statement of the law. Even in civil cases,[22] the Seventh Circuit has made clear that to receive such an instruction, a party seeking an adverse inference must prove that the other party intentionally destroyed the evidence in bad faith. *See* Committee Comment to Pattern Civil Jury Instr. 1.20 (citing *Miksis v. Howard*, 106 F.3d 754, 762-763 (7th Cir. 1997). This requires "a showing of an intentional act by the party in possession of the allegedly lost or destroyed evidence." *Spesco, Inc. v. General Elec. Co.*, 719 F.2d 233, 239 (7th

---

[21]  Defendant also had the opportunity to cross-examination Special Agent Landau extensively on the fact that there were Snapchat messages missing from Arianna S.'s cell phone. [176] at 62:15–73:3.

[22] When asked at trial, defense counsel could not and remains unable to cite any authority to support the use of the proposed destruction of evidence instruction in a criminal case.

Cir. 1983). The proposed instruction removed the "intentionally" modifier present in the pattern instruction. *See* Seventh Circuit Pattern Civil Instr. 1.20. More importantly, defense counsel conceded that there is no allegation of bad faith in this case, let alone evidence of bad faith. Mt. Hr'g Transcr. at 6; [188] ("We didn't at the time, nor do we make now, any argument that there's any showing of bad faith on the government."). And no reasonable jury could have found on the trial record that the Government's actions caused the evidence to be destroyed. *United States v. Robelledo-Delgadillo*, 820 F.3d 870, 878 (affirming district court's decision rejecting spoliation instruction where there was "no evidence whatsoever that the government destroyed" the deleted parts of the recording).[23]

For all these reasons, Defendant's proposed instruction was inappropriate and improper, and this Court correctly rejected it. The Court denied Defendant's Rule 33 motion on this basis.

## IV. Conclusion

For the reasons explained above, Defendant is not entitled to an acquittal under Rule 29 or a new trial under Rule 33. Those motions were previously denied, [176] and [188]. Because Defendant cannot establish a due process violation based upon the destruction of evidence, this Court also denies Defendant's oral motion to dismiss the indictment.

Date: March 4, 2025                                        Entered:

John Robert Blakey
United States District Judge

---

[23] The record reveals that law enforcement played no part in perpetuating the deletion of messages. Arianna S. testified that only that her mother instructed her to delete her Snapchat account, [175] at 134:23-135:3, and that Defendant had previously instructed her to delete their messages on January 18, 2020. *See id.* at 154:23–154:5 ("Delete our convo. Just delete our convo baby. You get – you got pics too. You gotta get rid of them . . .").